HOPKINS *v.* WILSON.

In Banc. Nov. 1, 1951.

No. 38387 (54 So. (2d) 661)

J. L. Roberson, S. H. Roberson, Harvey T. Ross and J. W. Hopkins, for appellant.

Holcomb & Curtis, and Stovall Lowrey, for appellee.

416

Lee, J.

J. B. Hopkins and J. Van Wilson were candidates for the office of supervisor of the First District of Coahoma County in the primary election on August 7, 1951. There are two precincts in that district, namely, Lula and Rich. According to the reports of the managers of the election, each candidate received 116 votes. The executive committee, on its canvass of the returns, found that Wilson received 117 votes and Hopkins 116, and declared Wilson to be the nominee.

Hopkins, thereupon proceeding under Section 3143, Code 1942, filed his contest with the committee, setting up his several grounds of contest. Seasonably Wilson filed his answer and cross petition. However, no action on the contest was ever taken by the committee.

Hopkins, thereupon proceeding under Section 15, Corrupt Practices Act of 1935, Code 1942, Secs. 3182-3188, filed his petition in the circuit court for a judicial review, setting up the same grounds of contest. Wilson filed both a motion to dismiss for want of jurisdiction, and his answer and cross petition. The special court was constituted, and on the hearing, overruled the motion to dismiss, together with several other motions not necessary to mention.

On the trial, at the conclusion of the evidence, oral and documentary, the trial judge made his findings of fact, and dictated them to the reporter. He adjudicated that Wilson had received 117 votes and Hopkins had re-

ceived 115 votes, and declared Wilson to be the nominee. A decree was entered accordingly and Hopkins appeals here upon his bill of exceptions, which, on order of the trial judge, includes the transcript of the evidence.

### On Appellee's Motion to Dismiss

This motion was urged in the lower court and is urged here. The contention is that Section 3182, Code 1942, was not complied with as regards the two certifying attorneys. However, the proof showed that two nephews of one of the certifying attorneys married two nieces of appellant's wife, and that the other attorney is a nephew of one of the lawyers in the partnership representing appellant. Neither of these attorneys was disqualified on account of the stated relationships, and the evidence was ample, in all respects, to sustain the action of the trial judge in overruling the motion. Norwich Union Fire Ins. Co. v. Standard Drug Co., 121 Miss. 510, 83 So. 676, 11 A. L. R. 1321; Shireman v. Wildberger et al., 125 Miss. 499, 87 So. 657; McLendon v. State, 187 Miss. 247, 191 So. 821; Harris v. Stewart, 187 Miss. 489, 193 So. 339.

### On the Merits

Several points are assigned and argued by the appellant, and we shall deal with as many of them as we deem to be necessary.

(1) The vote of Mrs. J. C. Irvine. The objection by the appellant was that this item was a new matter; that it was not referred to in the answer filed with the executive committee; and that it could not be brought up before the special tribunal. However, appellee made no proof on this matter, and the finding of the trial judge, and his decree thereon, show that this vote was not considered by the court at all. Thus no harm could have resulted in the failure to strike the allegation.

(2) As to the Hamblett vote, the Mrs. Russell I. Arnold vote, the G. F. McMullin vote, the X marked ballot, and the blotted or ink-splotched ballot, without

detailing the facts, it is sufficient to say that, in our opinion, the trial court was correct in his decision of all of these matters.

(3) The absentee ballots of Mr. and Mrs. R. W. Donaldson. These ballots were for appellant, but were not counted by the trial judge, on account of which appellant claims error. R. W. Donaldson was born in Texas in 1925 and lived there until 1943, when he enlisted in the Navy. He was sent to Millsaps College, in V-12 training, until November 1945. There he met Frances Ashley of Rich, Mississippi, whom he married on May 12, 1945. In June 1946 he reported for active duty aboard ship. He was discharged in 1947 and came, as he says, "home to Rich". He attended summer school at the University of Oklahoma, and returned to Millsaps in the fall of 1947, from which institution he was graduated·on June 1, 1948. He was exempt from examinations and spent the two weeks immediately prior to obtaining his diploma by working in the crops at Rich. About June 15, 1948, he accepted a temporary job with California Oil Company at Natchez and has since worked for that company. He was working 40 hours, and went to Rich on weekends while his wife was nursing her mother. He had made up his mind in 1946 that he was going to make Rich his permanent home. On his discharge from the Navy, he gave Rich, Mississippi, as his address. His wife registered there on March 12, 1949; and he likewise registered January 14, 1950. Both paid poll taxes for 1949 and 1950 in Coahoma County. They lived at Natchez in rented quarters. They operated a small grocery because it was in the same building with their apartment, and they would have been required to move, if it had been rented to someone else. They never registered anywhere else. They never offered to vote anywhere else. Of course they did not pay poll taxes elsewhere. Their surplus clothing and personal effects are kept in the home at Rich, in which Mrs. Donaldson is interested, and no one else uses their living quarters.

■■ Domicile of choice requires residence and the intent to remain. When these concur the domicile is established. 28 C. J. S., Domicile, Sec. 9, p. 11. See also 17 Am. Jur. 603.

In May v. May, 158 Miss. 68, 130 So. 52, in a divorce action, it was held that where ■■ a domicile is once acquired it is presumed to continue, and the burden of proving the contrary is on the party alleging it. See also 28 C. J. S., Domicile, Secs. 9, 10, 11 and 12; Smith v. Deere, 195 Miss. 502, 16 So. (2d) 33.

■■ We think that, subsequent to the time of his determination in 1946 to make his permanent home at Rich, the voter, by his acts, established his domicile at that place; and his temporary absence, in view of his intention to return, did not change his domicile. See 28 C. J. S., Domicile, Sec. 11, p. 18.

Manifestly these parties were qualified electors of the precinct of Rich, and their ballots should have been counted for the appellant.

■■ (4) Three ballots for appellee marked with pencil. Appellant charged in his contest that three ballots, marked with pencil, were cast for appellee. In his answer, appellee admitted such allegation, but averred that "there were also three pencil marked ballots cast in said box for contestant; so that the disallowance by the committee of all pencil marked ballots would result in no advantage to either candidate, nor in any wise change the result of the election." In his answer and cross petition, appellant denied, on information and belief, that three pencil marked ballots were cast for him. No proof at all was introduced in regard to such ballots. But appellant contends that he is entitled to rest on the admission of his adversary, and, since appellee made no proof on his averment, the total number of appellee's votes should have been decreased by three.

But it must be kept in mind that, in the trial of a case under this Act, Section 3184, Code 1942, declares the duty of such court as follows: "The special tribunal so

constituted shall fully hear the contest or complaint de
novo and *make a finding dictated to the reporter covering
all controverted material issues of fact * * *"*. (Emphasis supplied.)

After all the evidence was heard, and the arguments
were concluded, the trial judge made a full finding of fact
on a number of objections, and announced his conclusion
that the appellee had received 117 votes and appellant
had received 115 votes. He made no reference to the
pencil marked ballots at all. In fact, nowhere in the
record other than in the pleadings above mentioned is
there any reference to or mention of those ballots. The
record discloses that both the Lula and the Rich boxes
were in court. It affirmatively appears that some of the
records were taken out of those boxes. Whether the
trial judge examined the contents does not appear.
At least they were available to him. If appellee's qualified admission in his answer was sufficient proof that
three illegal pencil marked ballots should be taken from
him, why was not a suggestion to that effect made to
the trial judge? Why was there a failure to obtain from
the trial judge a finding of fact on that question? If
he, in fact, had overlooked those ballots, by calling the
matter to the court's attention, there would have been
a change by which the appellant would have been victor
by one vote.

In the concluding words of his opinion the court informed counsel to write in the decree "the court having
heard the proof fully from the contestants and your
motion (evidently to dismiss) and that this court affirms
the action of the county democratic executive committee,
except as to the marked ballot which was counted for
Mr. Hopkins and should not have been counted, giving
Mr. Wilson 117 votes and Mr. Hopkins 115". From this
statement it is clear that the judge reached a definite
conclusion. He necessarily adjudicated all essential facts
to justify that conclusion. He thought he was making
a finding "covering all controverted material issues of

fact" as the statute required. And there was no request for a finding of fact as to the pencil marked ballots and none was made. In giving due credit to the presumption of regularity, we must assume (1) either that the trial court was led to believe that this proposition had been abandoned, or (2) that he covered all controverted issues of fact and he did, in fact, view the documents which were available and could have been viewed by him, and that he offset three pencil marked ballots for each candidate over against each other.

The trial judge, in holding that Wilson was the nominee, excluded the two Donaldson ballots, which have been dealt with herein above. ██ ██ Since we are holding that these two ballots should have been counted for Hopkins, the result is that each of the candidates received 117 votes. Since there is a tie, neither candidate is the nominee.

We, therefore, reverse the judgment of the lower court, and will enter a judgment here to the effect that Wilson was not nominated, but that the vote between him and Hopkins is a tie, so that in accord with the rule laid down in Smith v. Deere, 195 Miss. 502, 16 So. (2d) 33, 35, "such further course may be taken as provided in said Subdivision (f), Section 15", Section 3187, Code of 1942.

Reversed and judgment here.

ON SUGGESTION OF ERROR.

**Holmes, C.**

Appellant and appellee have each filed a suggestion of error.

Appellee contends on his suggestion of error that the Court decided this appeal on its merits while there was pending and undisposed of a motion to dismiss the appeal. The cause was submitted for consideration on both the motion to dismiss the appeal and on its merits. Although no specific mention of the motion to dismiss the appeal was made in the opinion, the Court gave due

consideration to such motion and was of the opinion that it should be, and it was, overruled before proceeding to a consideration of the appeal on its merits. In order to clarify the question raised, the original opinion is modified by adding as an additional paragraph thereto, just preceding the caption "On Appellee's Motion to Dismiss", the following: "We have given due consideration to the motion to dismiss the appeal and are of the opinion that it should be and it is overruled."

Appellee further contends that the Court erred in holding Mr. and Mrs. R. W. Donaldson to be qualified voters of the Rich precinct. We are unable to concur in this contention.

We have duly considered the suggestion of error filed by appellant and are of the opinion that it should be overruled.

It follows, therefore, that both suggestions of error are overruled.

Opinion modified and suggestions of error overruled.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the opinion is modified and suggestions of error overruled.