TEDDER, et al. *v.* BOARD OF SUPERVISORS OF BOLIVAR COUNTY.

June 9, 1952.

No. 38494 (59 So. (2d) 329)

Allen & Allen, for appellants.

724

Chas. C. Jacobs, Jr., and Frank O. Wynne, Jr., for appellee.

Ethridge, J.

This is an appeal from an order of the Board of Supervisors of Bolivar County, Mississippi, adjudicating that three-fifths of the qualified electors voting had approved the issuance of $93,000 in bonds of the Boyle Consolidated School District of Bolivar County. The election was held on September 29, 1951, under the authority of Miss. Laws 1950, Ch. 231. Appellants, George Tedder and four other qualified electors of the School District, contested the report of the election commissioners to the Board of Supervisors. The Board held a hearing on the contest on October 9, 1951, at which both contestants and proponents of the bond issue introduced considerable testimony as to whether certain persons who voted were qualified electors and certain votes were legal. On October 10 the Board executed an order adjudicating the 281 qualified electors had voted, and that 170 voted in favor of the bonds and 111 against; that, therefore, more than three-fifths of the qualified electors who voted in the election had voted in favor of the issuance of the bonds, as required by Ch. 231, Sec. 7, Miss. Laws 1950.

Appellants, the contestants, appealed from that order to the Circuit Court of the Second Judicial District of Bolivar County, under Code of 1942, Sec. 1195, with a bill of exceptions as provided by that statute consisting of various documents, orders, ballots, and a certified transcript of the testimony before the Board. The special circuit judge reviewed the bill of exceptions, heard arguments, and rendered an opinion and judgment, which affirmed the end-result of the Board's order and held that the bond issue had carried.

The Boyle Consolidated School District was created by an order of the Board of Supervisors of Bolivar

County on March 27, 1918. Appellants first argue that the organization of the district is void and that it is subject to collateral attack here; that the order creating the district failed to determine and describe its boundaries, does not show that there was a petition of the majority of the electors, or that an election was had to create it; that it failed to adjudicate that the district contained no less than ten square miles and other essential facts. ██ However, the question of the validity of the district was not presented to the Board of Supervisors nor raised in the bill of exceptions. This issue was first raised in the circuit court. Appellants were not then in a position to raise it. ██ Moreover, even if there were any errors in the organization of the district, which we do not consider, they have been cured by the numerous curative statutes passed by the Legislature since 1918, many of which provide substantially that all proceedings had by school districts "are hereby, approved, ratified and confirmed", and "the same are hereby declared to be valid and duly organized districts * * * regardless of any defect or omission or irregularity in the proceedings for the organizations or creation of the districts * * *." See Miss. Laws 1926, Ch. 280; Miss. Laws 1950, Ch. 288; Bullock v. Sanford Consolidated School District, 1929, 153 Miss. 476, 121 So. 267; Leech v. Wileman, 1937, 179 Miss. 836, 177 So. 12, dealt with a claimed validation under Ch. 263, Laws 1936, which expressly provided that the order creating the district must describe its boundaries, and that order did not do so. The present order of 1918 described by sections the lands incorporated in the Boyle District. And the cited validation statutes do not contain the restriction which was in the 1936 act involved in the Wileman case.

The appellants argue that the Board of Trustees of the Boyle Consolidated School District did not comply with the law in passing its resolution adjudicating that it was necessary that the bonds be issued, that the total indebtedness of the district will not exceed the statutory

728

limit, and requesting the Board of Supervisors to call an election to pass upon the bond issue. ██ Appellants say that this resolution recites, but does not adjudicate, that the district is a legally existing district, but we cannot agree. ██ Nor is it necessary for the resolution to set forth in detail the plans, specifications, and costs of the proposed improvements to the school plant. The resolution of the Board of Trustees of the District complied with the requirements of Ch. 231, Miss. Laws 1950. And we also think that the order of the Board of Supervisors calling the election constituted a full compliance with the requirements of the cited statute.

Moreover, the record shows that the election commissioners of the county complied with the law in conducting the election. It is true that Code Sec. 3239 requires the election commissioners to meet and revise the registration and poll books five days before an election, and that the Bolivar County Commissioners met only three days before the bond election. ██ But there was no showing that appellants were prejudiced by that two-day delay, and in the absence of such a showing, although the provisions of the statute should be complied with, they are directory and not mandatory, in the sense that failure to comply literally with the act would not of itself invalidate the election. An election commissioner testified that they tried to get capable and fair people to serve as managers, that he thought they did so, that several people refused, that one manager was against the bond issue, and that the election was conducted fairly. There is no charge or proof of fraud whatever in the conducting of the election. ██ Code Sec. 3243 is not applicable to a special bond election where there are no party candidates involved.

The undisputed testimony showed that the Boyle Consolidated School District included both the Boyle precinct and six sections in the north part of the Shaw precinct. ██ The election commissioners furnished

the managers with the Boyle poll books showing the qualified electors in that precinct, with a map showing the area of the entire School District, and advised the managers that anyone who offered to vote whose name was not in the Boyle precinct book should be questioned to determine whether he lived in one of the six sections of land in the Shaw precinct which were in the Boyle School District, and that if it appeared that the voter lived in one of those six sections, and if he was qualified to vote in the Shaw precinct from the Shaw poll books, he should be allowed to vote. This procedure was followed by the election managers. This was an ample compliance with the statutes under the circumstances and constituted a practical method.

Appellants also say that it was necessary for the record to show affirmatively that the Cleveland newspaper in which the notice of election was published met the requirement of Ch. 427, Miss. Laws 1948. The proof of publication in the record states that the newspaper which published the notice of the election meets the requirement of that statute, and there is no evidence to the contrary. The parties agreed that the proof of publication should be a part of the bill of exceptions.

It is contended that the order of the Board of Supervisors and the record herein do not properly show proof of publication of notice of the election. The order of the Board calling the election directed the clerk of the Board to publish notice of the election in the specfic form as set out in that order. The report of the election commissioners made to the Board after the election certified "that said election was advertised by the clerk of the said board of supervisors for the time and in the form and manner as required by law." The final order of the Board of October 10, 1951, from which this appeal is taken, "adjudicated that all proceedings with reference to issuance of said bonds are legal and proper". Other than as to the specific number of votes, the Board of Supervisors necessarily approved the report of the elec-

tion commissioners. And the bill of exceptions, which was approved by appellants' attorneys, contains a copy of the proof of publication of the notice of the bond election, which reflects that it was filed with the clerk of the Board on October 1, the same day on which the report of the election commissioners was filed. Under these circumstances, the record sufficiently showed the proper notice of the bond election was given, and that the Board of Supervisors so adjudicated in its order.

There was a special election on a proposed bond issue for the Boyle School District on June 2, 1951, apparently on the same proposed project. The present election was held almost four months later on September 29. Appellants say that elections should have some degree of finality; that these two elections on the same project were too close together; and that therefore this election was void. ■■ ■ Ch. 231, Miss. Laws 1950, which controls this election, does not have any provision establishing a minimum interval between succeeding bond elections, and we are not warranted in judicially legislating such an interval. Statutes establishing intervals between succeeding elections, which are cited by appellants, do not affect the present type of election. And the fact that the Legislature established such intervals for other kinds of elections and did not provide one here is persuasive that it did not intend to do so.

■■ ■ The Boyle School District is in the Second Judicial District of Bolivar County, in which Cleveland is located. The Board of Supervisors approved the commissioners' report of the election when the Board was sitting in the first District at Rosedale. But Ch. 85, Sec. 11, Miss. Laws 1900, provides that the jurisdiction of the Board "shall extend over the entire county, just as if if were not divided into separate districts." The Circuit Court of the Second Judicial District heard this appeal. Because of the terms of the 1900 statute, and the location of the School district, the Board could act at Rosedale for

the entire county, and also the proper venue of the circuit court was in the second district.

Appellants also argue that there were twenty-eight illegal votes which were cast at the election, and that their exclusion would change the result of the election. Under the rule established in Dye v. Brewton, 1919, 119 Miss. 359, 374, 80 So. 761, and such recent cases as Walker v. Smith, Miss., 56 So. (2d) 84, suggestion of error overruled, Miss. 1952, 57 So. (2d) 166, the contestants, appellants, have the burden of proving both (1) the existence of illegal votes, and (2) that there were enough of such illegal votes cast for the bond issue as to change the result of the election.

There were five alleged marked and spoiled ballots cast for the bond issue. The circuit court correctly allowed four of those ballots for the bond issue and rejected one, because it was marked in pencil. Code of 1942, Sec. 3269, amended by Miss. Laws 1948, Ch. 306. As to whether a ballot is so spoiled or marked as to be unacceptable, the statutory test of Code Sec. 3270 is whether it is "impossible to determine from the ballot the voter's choice".

We also think that with two exceptions the opinion of the circuit court was correct concerning the ten challenged ballots for the bond issue. Apparently the circuit court counted the ballot for the bonds of Mrs. W. W. Hazzard, but it was marked in pencil and therefore should not have been counted. However, the court erroneously refused to count the ballot for the bonds of Mr. W. W. Hazzard, so the result of the circuit court's action as to the ten challenged ballots is numerically the same. There were marks on both places on the ballot of W. W. Hazzard, but it is manifest that the voter intended to strike out his original vote against the bonds, and by his clear mark to vote for the bonds. The test, under Code Sec. 3270, and Guice v. McGehee, 1929, 155 Miss. 858, 872-873, 124 So. 643, 125 So. 433, is whether it is possible to reasonably determine from the ballot the voter's choice.

The challenged ballot of William H. Allen was properly counted by the circuit court under such cases as Hopkins v. Wilson, 1951, 212 Miss. 404, 419-420, 54 So. (2d) 661.

With reference to the other group of challenged votes, the circuit court correctly allowed the vote for the bond issue of C. E. Franks, although it gave the wrong reason for its action. ██ ██ C. E. Franks testified that he had lived at Boyle in the Boyle School District since 1944, "except the time I was in Hattiesburg for a while." Since 1944 he has been registered to vote in the Boyle School District, and has voted there in all elections since that time. He went to Hattiesburg in the spring of 1949 on a visit. He said he ran into a place or farm there and thought that it would be profitable to buy it; that he did not mean to stay there permanently, but just ran into a good deal, that his idea was to make a quick profit; that after a while he found he did not like it and came back to Boyle in October, 1950. He farmed the place which he had bought near Hattiesburg in 1949 and 1950. His family went down there with him, and moved back to Boyle after he sold the place. He never did move his registration from Boyle. A reasonable interpretation of his testimony is that he intended for Boyle to remain his legal domicile, and that he went to Hattiesburg only on a temporary basis. But his temporary absence from Boyle did not change his domicile. We think that he was a qualified elector. Hopkins v. Wilson, 1951, 212 Miss. 404, 419-420, 54 So. (2d) 661.

The same observations apply to Thedford Eugene Franks, the son of C. E. Franks. He testified that he first began to live in the Boyle School District in 1944 when he was 14 years of age; that he lived there with his family and belonged to a Boyle church; that he joined the Army in September 1948, and when he first got out a year later went to Hattiesburg to be with his father, but that he did not intend to make it his home but intended to come back to Boyle, which he did in October, 1950; that he was registered in the Boyle precinct and had voted

there in the preceding general election. Manifestly this voter also was a qualified elector. Hence the circuit court correctly allowed those two votes.

The circuit court ruled that Dewey Peeples was a qualified elector. Peeples did not testify, and there is no proof as to how he voted. Assuming but not deciding that he was not a qualified elector, the contest-.ants wholly failed to meet their burden of proof which required them to show not only that he was disqualified, but that he voted for the bond issue. That proof lacking, we cannot debit the proponents with Peeples' vote. Hence in its computations the circuit court reached the same result as to this vote that we do. The same observations are pertinent to the vote of Mrs. C. P. Gilmer. She did not testify, and there is no proof as to how she voted, so contestants did not meet their burden of proof. The fact that the poll tax receipts of several voters showed Shaw as their voting precinct does not negative the fact that the voters may have lived in the Boyle School District, which included six sections in the Shaw precinct. We have also considered carefully the other challenged votes which were presented to the circuit court, and the testimony with reference to them, and concur in the conclusions reached by the learned special circuit judge. Where the voters were qualified electors, objections were properly sustained to questions to them as to how they voted.

This appeal from the order of the Board of Supervisors was taken under Code Sec. 1195, which provides that the review shall be on a bill of exceptions, and that the circuit court "shall affirm or reverse the judgment; and if the judgment be reversed, the circuit court shall render such judgment as the board * * ought to have rendered, and certify the same to the board of supervisors * * *." The final judgment of the circuit court adjudicated that the order of the board of supervisors "is modified and the following judgment is rendered as the judgment or order which should have been rendered by said board of supervisors." The judgment

then proceeded to set forth in eight pages a proposed order which the Board should have executed. The judgment then directed the clerk to certify a copy of the judgment to the Board of Supervisors "to be entered on the minutes of said board, there being included herein the judgment which ought to have been rendered by the board of supervisors in said cause." The proposed order of the Board, which the circuit court in effect directed the Board to enter on its minutes, adjudicated numerous facts which the Board probably would adjudicate prior to issuing the bonds. It also found that a total of 265 qualified electors of the School District voted, and that a total of 161 votes were cast for the bond issue and 104 case against it "if the vote of Mrs. C. P. Gilmer was cast for the bond issue." This latter must here be considered to have occurred, since contestants failed to meet their burden of proof of showing how Mrs. Gilmer voted. And the judgment adjudicated that more than three-fifths of the qualified electors voting voted in favor of issuance of the bonds, and that the Board is empowered to proceed with the issuance and sale of the bonds. We construe these adjudications to be part of the circuit court's judgment.

The quoted part of Code Sec. 1195 gives the circuit court power to render such judgment as the Board ought to have rendered only "if the judgment be reversed". But the order of the Board of Supervisors was in effect affirmed. The court correctly differed with the Board only upon factual details serving as the basis of the judgment. Hence the circuit court had no power under the statute to render a judgment or order for the Board. We therefore modify the judgment of the circuit court in so far as it directs the Board of Supervisors to enter the specified order, and in all other respects affirm the court's judgment

Affirmed as modified.

**McGehee, C. J.,** and **Alexander, Hall,** and **Holmes, JJ.,** concur.