558 So.2d 821 (1990)
Elaine Irene NEWMAN
v.
Arnold NEWMAN.
No. 07-CA-58851.
Supreme Court of Mississippi.
February 21, 1990.
Rehearing Denied April 11, 1990.
*822 James Briley Richmond, Jr., Biloxi, for appellant.
Thomas Wright Teel, Sekul Hornsby Teel & Tisdale, Biloxi, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents important choice of law questions in the context of a wife's claim of a property right in a former husband's military retirement pension. We hold the claim governed by the law of the state(s) of domicile of the serviceman during the time he was a member of the United States Armed Forces.
The court below failed to respect these principles en route to summary dismissal of the wife's claim. We reverse and remand.

II.
Elaine and Arnold Newman were married on September 8, 1950, in Los Angeles, California. At that time both were residents and domiciliaries of California. Shortly after their marriage, Arnold began a career in the United States Air Force that took him and Elaine to many different places both in the United States and abroad. Despite their travels with the military, there is substantial evidence the Newmans remained domiciliaries of California, always intending to return there at the end of Arnold's career.
In time the marriage soured and the Newmans separated on August 11, 1968. Arnold was then stationed at Keesler Air Force Base in Biloxi, Mississippi. He filed for divorce in the Chancery Court of Harrison County, Mississippi, on the grounds of habitual cruel and inhuman treatment. On September 4, 1968, after nearly eighteen years of marriage, the Chancery Court entered its judgment dissolving the marriage. At the time, Arnold was 37 years old, Elaine 33.
Incident to the divorce, the Chancery Court vested custody of all three children, Melvin, 17, Michael, 15, and Laurie, 11 in Arnold. Elaine was allowed reasonable visitation rights. The Court ordered no division of the property, nor did the Court in the divorce judgment award alimony to Elaine. Significantly, Arnold's expected military retirement pension was not mentioned in the divorce proceedings.
On June 26, 1981, Arnold retired from the Air Force and now lives in Gulfport, Mississippi. Elaine long ago returned to California where she has remarried since the divorce.
On July 20, 1987, Elaine Newman filed in the Chancery Court of Harrison County her present complaint, claiming that she owns a property right in Arnold's military retirement pension. On August 14, 1987, Arnold answered Elaine's complaint and moved for summary judgment. On September 18, 1987, Elaine filed her response to the summary judgment motion and her own cross-motion for summary judgment supporting it with a memorandum and affidavit.
On October 9, 1987, the Chancery Court granted Arnold's motion for summary judgment and dismissed with prejudice the complaint. The Court denied Elaine's cross-motion for summary judgment. Elaine then perfected this appeal.

*823 III.
Our first question concerns the effect of the final judgment entered in 1968 in the divorce action between the Newmans. Principles of res judicata apply in divorce actions as any other. Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983); Brocato v. Walker, 220 So.2d 340, 343 (Miss. 1969). On the other hand, in the case of property jointly owned by the parties but undisturbed in the judgment of divorce, title remains as before. See, e.g., Bowe v. Bowe, 557 So.2d at 794 n. 1; Miller v. Miller, 298 So.2d 704, 706 (Miss. 1974).
Our examination of the 1968 divorce proceedings fails to reflect that Arnold's anticipated military retirement pension was mentioned or affected. Elaine's pre-1968 interest, if any, in Arnold's pension remains undisturbed.

IV.
We note preliminarily state authority to adjudge a former spouse's rights vel non in his or her former mate's military retirement pension. The Congress has enacted that such a pension, notwithstanding its federal source, is subject to the personal property laws of the states, laws which the states may enforce. See Federal Uniformed Services Former Spouse's Protection Act, 10 U.S.C. § 1408; Powers v. Powers, 465 So.2d 1036 (Miss. 1985). The controversy that once shrouded the matter is behind us.
The Chancery Court recognized this premise and proceeded to deny Elaine's rights in Arnold's military retirement pension. The Court decided the question by applying Mississippi personal property law, and our outcome determinative question is whether the Court was correct in this regard. As below, Elaine argues that the parties were domiciled in California at the time the pension was being earned and, accordingly, that California law should control. The point is of consequence because California is a community property state and a California wife's rights in property acquired during the marriage are quite different from those under Mississippi law. See, e.g., Casas v. Thompson, 42 Cal.3d 131, 720 P.2d 921, 228 Cal. Rptr. 33 (1986).
Arnold vigorously urges that the court below correctly decided the case under Mississippi law. He predicates his case on facts more to the point that Elaine is amenable to personal jurisdiction and that the Chancery Court of Harrison County had plenary authority to decide the case. All of this begs the question, by what law must the case be decided?
We have over the years cautioned against confusion of questions of personal jurisdiction and choice of law. While a foreign defendant may have sufficient contacts with Mississippi to be amenable to suit here, it does not follow that this state's substantive law will govern the rights and responsibilities of the parties. McDaniel, Administrator, etc. v. Ritter, 556 So.2d 303, 310 (Miss. 1989); Boardman v. United Services Automobile Assoc., 470 So.2d 1024, 1035 (Miss. 1985); Administrators of Tulane Educational Fund v. Cooley, 462 So.2d 696, 701 (Miss. 1984). Only recently we addressed the distinction in McDaniel.
For in personam jurisdiction purposes, the court focuses upon the contacts of a single party. On choice of law we look at all contacts of all parties  and more. Minimum contacts suffice for in personam jurisdiction. Choice of law seeks the state where the contacts are maximized. McDaniel, 556 So.2d at 310.
That a non-resident may have sufficient contacts with Mississippi to be amenable to suit here may empower a court of this state of otherwise competent jurisdiction to adjudge fully the controversy at hand. Yet a part of this state's law to be enforced in such an action is our choice of law rules which in turn require enforcement of the substantive law of the state of most significant relationship to the parties and the transaction. This is because in 1968 this Court embraced the choice of law principles now generally advanced in Restatement (Second) of Conflict of Laws (1971). See Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968); Craig v. Columbus Compress and Warehouse Co., 210 So.2d 645, 649 (Miss. 1968). Since that time we have confronted *824 choice of law problems in contests for rights in real property on three occasions, and on each such occasion the Court resorted to the Restatement for our controlling principles. Kountouris v. Varvaris, 476 So.2d 599, 605, 607 (Miss. 1985); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 458 (Miss. 1983); Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss. 1980).
Today's choice of law question concerns a contest over personal property. The Restatement (Second) addresses the matter of personal property acquired by parties during their marriage and in Section 258 provides:
Interests in Movables Acquired during Marriage
(1) The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the movable under the principles stated in § 6.
(2) In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state whether [sic] the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law.
Also applicable is Section 259 which provides
Removal of Movables of Spouses to Another State
A marital property interest in a chattel, or right embodied in a document, which has been acquired by either or both of the spouses, is not affected by the mere removal of the chattel or document to a second state, whether or not this removal is accompanied by a change of domicile to the other state on the part of one or more of the spouses. The interest, however, may be affected by dealings with the chattel or document in the second state.
Finally, Comment b. to Section 258 states
Of the factors listed in Subsection (2) of § 6, that which is of particular importance in the present context is the one which calls for implementation of the relevant policies of the state with the dominant interest in the determination of the particular issue. Except in rare circumstances, this state will be the state where the spouses were domiciled at the time the movable was acquired.

The principle embodied in Section 258 enjoyed early recognition in this state. In Lyon v. Knott, 26 Miss. (4 Cush.) 548, 566 (1853), the Court stated the prevailing rule in American jurisdictions: The law of the domicile at the time of acquisition of movable property determines the spouse's interests. This rule was derived from the case of Saul v. His Creditors, 5 Mart. (n.s.) 569 (La. 1827), as interpreted by Justice Story in his Conflict of Laws. This rule is characterized as one of partial mutability, as distinguished from full mutability (the rights to marital property vary with the actual domicile) and immutability (the rights to marital property are governed by the law of the marital domicile). See H. Marsh, Marital Property in Conflict of Laws 103-10 (1952). Other authorities are in agreement that the law applicable to marital property is that of the domicile at the time of acquisition. See R. Leflar, L. McDougal, III & R. Felix, American Conflicts Law § 233 (1986 4th ed.); R. Weintraub, Commentary of the Conflict of Laws § 8.14 (1986 3d Ed.); A. Ehrenzweig, Treatise on the Conflict of Laws § 245, 648-49 (1962).
Three jurisdictions have, in fact, applied this very rule in interstate contests over rights in military retirement pensions. In Howard v. Howard, 499 So.2d 222 (La. Ct. App. 1986), the Louisiana Court of Appeals, in a divorce proceeding, followed its own precedent and held that Arkansas law governed the rights of the spouses to the pension for the temporal part of their marriage when the serviceman was domiciled in Arkansas. Howard, 499 So.2d at 225-26; see also Schueler v. Schueler, 460 So.2d 1120 (La. Ct. App. 1984), writ den., 464 So.2d 318 (La. 1985). In re Marriage of Landry, 103 Wash.2d 807, 699 P.2d 214 (1985) (en banc) applied the rule to a military pension in determining that seventy percent of the pension had accrued in common-law property *825 states and thirty percent had accrued in Washington, a community property state. In re Marriage of Landry, 699 P.2d at 216. A case quite like unto today's is Bryant v. Sullivan, 148 Ariz. 426, 715 P.2d 282 (Ariz. App. 1985). In Bryant, the Arizona Court of Appeals, applying the rule, held that California law might allow the plaintiff-wife to recover a portion of her ex-husband's military pension from their marriage ended in 1970, thus making dismissal of the claim premature. Bryant, 715 P.2d at 282, 285-86.
These things said, we accept the Restatement (Second) principles as the law of this state by reference to which we identify the rules that identify the rights, if any, of a spouse in a former spouse's military retirement pension. Where the serviceman had his domicile in a community property state for all or a part of the time he served in the armed forces, this state will respect rights the law of such state vests in the serviceman's former spouse. On the facts of this case we hold that Elaine's rights, if any, must be found in the law of the state(s) where Arnold was domiciled at the time his rights in the pension were earned.[1]

V.
Our question now becomes, in what state were the parties domiciled at the time Arnold earned his pension?
In conflicts cases we apply the law of this state regarding domicile. See Restatement (Second) of Conflict of Laws § 13 (1971). The first principle of the law of domicile is that every person has a domicile at all times and, at least for the same purpose, no person has more than one domicile at a time. Weisinger v. McGehee, 160 Miss. 424, 432, 134 So. 148, 150 (1931). On these facts there can be no question but that, at the time Arnold enlisted in the Air Force, California was his state of domicile, and Elaine's as well. Once established, domicile continues until a new domicile is affirmatively chosen. Bilbo v. Bilbo, 180 Miss. 536, 550, 177 So. 772, 776 (1938); Clay v. Clay, 134 Miss. 658, 662, 99 So. 818, 818 (1924).
Before a new domicile, commonly known as a domicile of choice, may be established, the person must evince an intent to abandon the domicile of origin. Johnson v. Johnson, 191 So.2d 840, 842 (Miss. 1966); Lynch v. Lynch, 210 Miss. 810, 816, 50 So.2d 378, 381 (1951). The mere fact that a person, having his domicile in one state, leaves home and has a fixed place of residence elsewhere does not in itself effect a change of domicile. Clay v. Clay, 134 Miss. 658, 662, 99 So. 818, 818 (1924).
Where one such as Arnold has an established domicile  as Arnold had in California at the time of his enlistment, the party seeking to show that he has established a new domicile has the burden of producing evidence that the party has chosen and acquired a new domicile and further the burden of persuading the trier of fact that the evidence preponderates to that effect. Hopkins v. Wilson, 212 Miss. 404, 420, 54 So.2d 661, 663 (1951); Bilbo v. Bilbo, 180 Miss. 536, 550, 177 So. 772, 776 (1938); Clay v. Clay, 134 Miss. 658, 662, 99 So. 818, 818 (1924).
Service in the Armed Forces does not alter these general principles. A person does not acquire a domicile of choice by his presence in a place under legal compulsion because ordinarily he has not signified an intent to acquire a domicile of choice. See Welch v. Lewis, 184 F. Supp. 806, 808 (N.D. Miss. 1960). Of course, a serviceman domiciled in one state at the time of enlistment may acquire a new domicile of choice in the state in which he is stationed by establishing a residence in that state and signifying his intent to remain indefinitely. See Bannan v. Bannan, 188 So.2d 253, 255 (Miss. 1966); Skelton v. Skelton, 236 Miss. 598, 602, 111 So.2d 392, 393 (1959); Thames, Domicile of Servicemen, 34 Miss.L.J. 160 (1963); Restatement (Second) of Conflict of Laws § 17, Comment d, Illustration 2 (1971); Note, Conflict of Laws: Limitations *826 on the "Domicile of Choice" of Military Servicemen, 81 Okla.L.Rev. 167 (1978).
Before us today is a final judgment of the Chancery Court of Harrison County, Mississippi, entered September 4, 1968, finding that Arnold was "an actual bona fide resident citizen of Harrison County, Mississippi, for more than one year next preceding the date of the filing of the bill of complaint" and that Elaine also was "a resident of Harrison County, Mississippi." The finding regarding Elaine's residence is dubious. For present purposes, we need only note that it is hardly entitled to collateral estoppel effect, as the matter was not actually litigated nor was the finding necessary to the decision. See, e.g., In re Estate of Smiley, 530 So.2d 18, 25 (Miss. 1988).
The record further reflects an affidavit made by Elaine on August 22, 1987, which provides, in relevant part:
2. That immediately prior to the marriage both the Affiant herein, and the Defendant Arnold Newman were residents and domiciliaries of the State of California.
* * * * * *
5. That throughout this time period she and Arnold Newman remained domiciliaries of the State of California as it was always intended that the parties would return to their home of Los Angeles when Arnold Newman's military career came to an end.
California is indeed a community property state, and, if (or for the period of time that) its law applies, quite likely Elaine holds substantial rights in Arnold's military retirement pension, see, e.g., Casas v. Thompson, 42 Cal.3d 131, 720 P.2d 921, 228 Cal. Rptr. 33 (1986), rights our courts are obliged to respect and obligated to enforce. In our present procedural posture, however, we may not reach these weighty questions. Rather, in view of what has been said above, it is quite apparent that there is a genuine issue of material fact regarding the domicile of the parties at the relevant times, an issue which would have precluded the Court granting Arnold's motion for summary judgment even if it had applied the correct rule of law.[2]
We reverse the judgment entered below and remand the case to the Chancery Court for further proceedings consistent with this opinion, as though Arnold's motion for summary judgment had been denied.[3]
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] We recognize the possibility that Arnold may have changed his domicile. If this be the case, the law of his several states of domicile will apply pro rata to settle Elaine's rights. See In re Marriage of Landry, 103 Wash.2d 807, 699 P.2d 214 (1985).
[2] Elaine filed a cross-motion for summary judgment in the Chancery Court and the Court denied that motion. Ordinarily, we do not on appeal consider denials of summary judgment, as such an order is not a final judgment. In any event, Elaine has made no effort to prosecute any appeal from the order below denying her motion for summary judgment. Today's action is without prejudice to Elaine's right to proceed anew, now that we have settled the controlling principles of law.
[3] In the event that the court should find California law applicable, we direct the court's attention, in addition to the Casas case cited above, to Aloy v. Mash, 38 Cal.3d 413, 696 P.2d 656, 212 Cal. Rptr. 162 (1985) and to In re Marriage of Fithian, 10 Cal.3d 592, 517 P.2d 449, 111 Cal. Rptr. 369 (1974). Cf. Cearley v. Cearley, 544 S.W.2d 661, 664 (Tex. 1976); Southern v. Glenn, 677 S.W.2d 576, 580 (Tex. App. 1984), for a formula for dividing military retirement benefits subject to the laws of a community property state.