650 So.2d 476 (1995)
Beatrice A. SAVELLE
v.
Vernon D. SAVELLE.
No. 92-CA-00027.
Supreme Court of Mississippi.
February 2, 1995.
*477 Lampton O. Williams, Jr., Williams Williams & Montgomery, Poplarville, for appellant.
James R. Hayden, Hattiesburg, for appellee.
EN BANC.
McRAE, Justice, for the Court:
In this appeal from a December 18, 1991 order of the Pearl River County Chancery Court, we consider whether one spouse may claim an interest in the other's pension plan as part of a division of property entered into pursuant to a divorce decree. The chancellor, not having the advantage of our recent decisions in the area of divorce law, correctly determined that a spouse is not entitled to an automatic interest in the other's plan, but, rather, a portion of what the other spouse paid in to the plan in order to balance the scales of equity between the parties. Accordingly, we affirm the lower court's decision.

I.
Beatrice and Vernon Savelle were married on February 19, 1958 in Louisiana where they lived until retiring to Mississippi in August, 1988. They were granted a divorce on grounds of irreconcilable differences in Pearl River County on December 18, 1991, dissolving the thirty-three year marriage.
Prior to his retirement, Vernon Savelle worked as a fireman with the City of New Orleans Fire Department for twenty-one years and nine months. He contributed six percent of his salary to the Fire Fighters Pension and Relief Fund from November 6, 1966 to November 6, 1986, the first twenty years of his employment with the fire department in New Orleans. The couple moved to Mississippi after he retired. They separated approximately three years later and Beatrice moved back to Louisiana. Upon his retirement, Vernon's original gross pension was $1,700.52 per month, subject to a three percent annual cost of living increase.[1] He also received a lump sum distribution of annual and sick leave accrued during his tenure with the Fire Department of $17,230.90.[2] Vernon now works part-time, averaging approximately $265.00 per month.
At the time of the divorce, Beatrice worked full-time as the Assistant Director of Medical Records at Slidell Memorial Hospital, where she earned a salary of $2,408.00 per month. She also received $650.00 in monthly rental income from a house in Louisiana she received under the terms of the couple's property settlement.
Beatrice sought an equitable division of the marital property and asserted that she was entitled to fifty percent of Vernon's anticipated retirement benefits. The chancellor did not apply Louisiana law, but based on "equity and good conscience," awarded Beatrice $12,000.00, calculated on the basis of the approximately $22,000.00 Vernon had contributed *478 to his pension plan over the years from his annual six percent salary deduction. In making his decision, the chancellor emphasized the inequities which would result from a fifty-fifty division. Beatrice, who still works full-time, would have enjoyed a monthly income of $3,277.00, while Vernon would have received only $868.00 per month. The chancellor's refusal to make an equal division left the parties' current salaries intact: Mr. Savelle realizing $1798.37 from his pension plan and Mrs. Savelle realizing $2,408.80.

II.
Beatrice, who had lived in Mississippi for three years prior to the divorce, contended that the chancellor erred in not applying Louisiana law and, further, in not awarding her fifty percent of the community property including Vernon's pension benefits and deferred compensation (annual and sick leave). See Sims v. Sims, 358 So.2d 919, 922-23 (La. 1978) (right to annuities and other retirement plan benefits are community assets). We disagree.
Our most recent decisions in family law direct us to apply Mississippi law to divorces sought within our jurisdiction. See Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994). Significant in Hemsley, the parties lived in many different locations during their marriage, but this Court applied Mississippi law in ascertaining how the property should be divided. Id., 639 So.2d at 911. In Ferguson, this Court recognized that our chancery courts are empowered to apply Mississippi law to pension plans, military retirements, and railroad retirements. Id., 639 So.2d at 927.
Based on our decisions in Brown v. Brown, 574 So.2d 688 (Miss. 1990), Southern v. Glenn, 568 So.2d 281 (Miss. 1990) and Newman v. Newman, 558 So.2d 821 (Miss. 1990), Beatrice argues the chancellor should have applied the community property law of Louisiana, where the parties were domiciled during the period the assets were acquired. However, as distinguished from the case SUB JUDICE, the assets in those cases were military retirement benefits, concerning direct payments made by the government to a nonmilitary spouse. Unlike ordinary pension plans, they are governed by federal law, the Federal Uniformed Services Former Spouses' Protection Act, (FUSFSPA), 10 U.S.C. Sec. 1048.[3] We explained in Brown that, pursuant to FUSFSPA, a spouse's right to the other spouse's military pension benefits was governed by the property law of the state of domicile. 574 So.2d at 690. We further stated that:
As we perceive FUSFSPA, it did not vest any rights in anyone. It merely removed a federal bar and allowed the states to treat the military retirement pensions of their domiciliaries as personal property subject to state property laws.
Id. Accordingly, we have respected the laws of community property states and allowed spouses to stake a claim to military pension benefits where the evidence demonstrates that the benefits accrued while the working spouse was domiciled in a community property state. Newman, 558 So.2d at 825-826. We have not extended this principle beyond military pension benefits, nor are we inclined to do so now. Thus, Mississippi law governs Beatrice's claim.
Mississippi is not a community property state. This Court, by judicial decision, has adopted equitable distribution. See Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994). Therefore, one spouse has no vested right in the other's pension or retirement benefits. Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss. 1993); Southern, 568 So.2d at 283. In the recent case of Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994), we declared military and civil service retirements benefits to be assets subject to equitable division by the chancellor. "A spouse who has made a material contribution toward the acquisition of an asset titled in the name of the other may claim an equitable *479 interest in such jointly accumulated property." Id. at 913 (citing Jones v. Jones, 532 So.2d 574, 580-81 (Miss. 1988).
Furthermore, this Court reiterated that a chancery court has authority, where equity so demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties. Hemsley, 639 So.2d at 914 (citing Brown v. Brown, 574 So.2d 688, 690 (Miss. 1990)). Hemsley defined marital property for the purpose of divorce as being "any and all property acquired during the marriage." Id. at 915. A spouse's military retirement pension is an asset which the court, when considering matters such as alimony and child support incident to divorce and, thereafter, modification of either of each, is certainly charged to consider. Southern v. Glenn, 568 So.2d at 283-84, n. 1; Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990).
This Court concluded in Ferguson, "[t]he chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994). This division does not require an automatic fifty-fifty split or a vested right in the other spouse's pension plan. When dividing marital assets between divorcing parties, the chancellor must have foremost in his mind fundamental fairness. "Where one spouse has contributed directly to the fund, by virtue of his/her labor, while the other has contributed indirectly, by virtue of domestic services and/or earned income which both parties have enjoyed rather than invested, the spouse without the retirement funds in his/her own name could instead have been working outside the home and/or investing his/her wages in preparation for his/her own retirement." Id. at 934.
In effect, equitable distribution was effected in this case because the chancellor did not give Mrs. Savelle an interest in the pension plan, but instead, monies which reflected her contribution to the marital assets. We find that the chancellor, without the aid of Hemsley and Ferguson, sufficiently balanced the equities between the Savelles.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PRATHER, P.J., dissents with separate written opinion joined by BANKS, J.
PITTMAN, J., dissents with separate written opinion joined by BANKS, J.
PRATHER, Presiding Justice, dissenting:
At issue in this domestic relations case is a conflict of law question. Did the trial court err in applying Mississippi substantive law (equitable distribution) to a pension plan and deferred compensation earned while the parties were residents of Louisiana, a community property state, where the parties had only been residents of Mississippi for two years prior to their separation and divorce? Because the majority misconstrued our decisions on conflicts of laws in these situations, I dissent.
This appeal is a conflicts of law problem, not merely a domestic law problem. Mississippi follows the Restatement (Second) of the Conflict of Laws in deciding the appropriate state law to apply in conflicts issues. The Restatement provides that the law of the forum where the parties were domiciled at the time the rights in the pension were earned controls its characterization. Newman v. Newman, 558 So.2d 821, 825 (Miss. 1990).
The majority attempts, at this point, to create a distinction between military and civilian pension plans on conflicts of law issues. Contrary to what the majority's opinion represents, civilian pension plans are governed by federal law as well as military pensions, namely by the Employee Retirement Income Security Act (hereinafter ERISA), found at 88 Stat. 829 (1974). Many of these plans, through annuities to the non-payor spouse, directly pass money to that spouse. It makes no difference that the pension plan is military.
The majority first states that our equitable distribution cases require Mississippi law to be applied. The majority cites Hemsley v. Hemsley for authority, since the husband was a military and civil service employee, *480 living in many states during their marriage, but living in Mississippi for eight years prior to divorce. But the majority cites to the Statement of Facts in that opinion only, in referring to what the chancellor did. Savelle v. Savelle, 650 So.2d 476, 478 (Miss. 1995), citing Hemsley v. Hemsley, 639 So.2d 909, 911 (Miss. 1994). This Court did not have a conflicts of law question before it in Hemsley, and the majority's citing of this case now is misplaced. As to Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss. 1994), this case was again not a conflicts of law issue, and at best, this Court is stating what a chancellor should do generally, since federal law has opened the distribution of "military and employee" pension plans to the chancellor's discretion. Ferguson, 639 So.2d at 927. Absent these two cases, the majority has no support for its assertion that Mississippi law automatically applies to all property division issues in family law.
The majority states this Court has declined to extend the Newman line of cases to civilian pension plans. However, this Court did not have a civilian pension plan before it in Newman, and did not discuss the conflicts of law problem concerning civilian pension plans, as this Court does not give advisory opinions. Game and Fish Comm'n v. Marlar, 206 So.2d 628, 631 (Miss. 1968).
Restatement § 258 deals with movable interests acquired during marriage. Newman, 558 So.2d at 824. Subsection 2 of this section mandates the most important factor in determining the applicable state law is the parties' domicile during the acquisition of the object. Id.
Applying this principle, it is clear that Mississippi should apply Louisiana law to the characterization of the pension plan in the Savelle case. Since the parties were domiciled in Louisiana during the pension's acquisition, this Court, following Newman, should apply Louisiana law in characterization of this marital asset.
Beatrice is correct in stating that this pension should be divided under Louisiana law. Both parties' stipulations agreed Beatrice and Vernon lived in Louisiana during Vernon's employment with the New Orleans Fire Department. Vernon earned this pension during his employment in Louisiana, and during the parties' marriage. This pension, as an intangible, is a movable object. Newman v. Newman, 558 So.2d 821, 824-25 (Miss. 1990).
However, choice of law for one issue does not preclude the chancellor from applying Mississippi law (equitable distribution) for other domestic law issues. Newman, 558 So.2d at 823-26. The chancellor has jurisdiction over the divorce, and issues stemming from it, such as alimony, attorneys' fees, etc.
It is possible to apply different states' substantive law for different issues within a domestic proceeding. See Newman v. Newman, 558 So.2d 821, 823-26 (Miss. 1990) (upholding chancellor's right to determine case in Mississippi, with Mississippi law, while requiring chancellor to use California law for pension right determination); In re Marriage of Whelchel, 476 N.W.2d 104, 110 (Iowa Ct. App. 1991); see also Valuation, § 10.02(1) at 10-29. This paradox arises from the inherent difference in standards between finding personal jurisdiction and deciding choice of law questions. Newman, 558 So.2d at 823. For personal jurisdiction, one merely looks for sufficient contacts to the forum. Id. In choice of law problems, a court must use the state substantive law where "the contacts are maximized." McDaniel v. Ritter, 556 So.2d 303, 310 (Miss. 1989).
Therefore, in this case, the chancellor may apply Mississippi law to the remainder of this proceeding, as in Newman. Given the circumstances of the case, this Court should have remanded the case to the chancellor with leave to allow the parties an opportunity to plead anew on issues other than their partial property division, in light of my interpretation that Beatrice's rights to Vernon's pension are determined by Louisiana law. In renewal of the pleadings, if requested, periodic alimony to Vernon is available for the chancellor to consider, as a matter of equity specially reserved for that court. Wood v. Wood, 495 So.2d 503, 506 (Miss. 1986). In doing so, the chancellor could use the detailed test given in Hemsley v. Hemsley, 639 So.2d 909, 912-13 (Miss. 1994), to arrive at an equitable distribution after application *481 of the Louisiana law to the pension plan.
When Beatrice retires, the chancellor, upon request, may modify any award to Vernon, if given, as a material change in circumstances adversely affecting her income. See Hemsley v. Hemsley, 639 So.2d at 915; Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993). This holding is consistent with our earlier pronouncements on equity, stating that chancellors do equity, so that justice may be done. Hall v. Wood, 443 So.2d 834, 843 (Miss. 1983).
In conclusion, my view is that the chancery court should apply Louisiana law to Vernon's pension plan as the plan accrued and vested in Louisiana. Since this majority chooses to apply Mississippi law, misconstruing this conflicts of law problem, I dissent. It is my view that this case should be remanded to the chancellor to reconsider in accord with these views on the conflict of laws question.
BANKS, J., joins this opinion.
PITTMAN, Justice, dissenting:
Equity was not accomplished in the division of Vernon's pension plan. Beatrice was awarded $12,000.00, in the form of a one-time cash payment. Vernon had contributed some $22,000.00 towards his pension and it is evident that Vernon's employer matched these funds. The pension also has accrued and grown in value. Beatrice requests that this Court determine her interest in and to Vernon's pension and deferred compensation plans. The recent decisions of Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994); Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994), pertaining to equitable division of martial assets, require that this Court reverse and remand so that the chancellor below may make an equitable division under the guidelines of Ferguson and the definition set forth in Hemsley. The chancellor need only to follow Louisiana law to characterize the property and to determine just what is or is not marital property. See Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994). Accordingly, I respectfully dissent.
At the outset, it is important to note that the learned chancellor, without the benefit of this Court's decisions of Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994); Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994); and Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994), understood that the chancery court possessed the power and authority to effectuate a division of martial property, including pension and retirement plans appearing solely in the name of one of the spouses.
The chancellor attempted to make an equitable division of Vernon's pension plan and his decision has been helpful to this Court. However, it is necessary to further inquire into the salaries and percentages utilized by the majority. The majority states that in the event Vernon's pension was divided by a fifty-fifty split, Vernon would be relegated to live on a mere $868.00 per month while Beatrice would enjoy the sum of $3,277.00 per month. Clarifications are in order, namely that Vernon opted to retire, he is 51 years of age and able-bodied, thus fully capable of currently engaging in full-time employment. This is factually supported in that Vernon is now employed part-time doing construction work. Therefore, Vernon, not unlike Beatrice could and may now enjoy a higher standard of living than is evident in the record. As Beatrice is of an age where full-time employment is possible, we likewise should not disregard the self-sufficiency ability of Vernon.[1]
In Hemsley, we held that "assets acquired or accumulated during the course of a marriage are subject to equitable division..." Hemsley, 639 So.2d at 914. The case sub judice is ripe for consideration and application of both the Hemsley definition of marital property and the factors promulgated in Ferguson. If we apply Mississippi law to this case, we accomplish an equitable result. Further, Judge Prather suggests in her dissent, that this case is properly resolved via application of the community property law of *482 Louisiana, and that may be so, however, we are currently able to equitably divide the pension through application of Mississippi law. In Ferguson this Court recognized "the need for guidelines to aid chancellors in their adjudication of marital property division." Ferguson, 639 So.2d at 928. In effectuating an equitable division of marital assets, one of the relevant considerations is for the chancellor to consider "the needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity." Id. at 928. The application of certain of the factors promulgated in Ferguson is likely to alter the result affirmed by the majority. As stated above, it appears clear that the chancellor should revisit the issue of Vernon's current needs, income and wage earning capability. While the award of $12,000.00 of the pension to Beatrice at first glance appears to be equitable, as we are told that Vernon contributed some $22,000.00 to it, this sum does not accurately reflect the overall value of the pension. The pension clearly is a marital asset, capable of a complete equitable division.
Based on the foregoing, I would reverse and remand this case in order to apply the Ferguson factors to the division of the pension plan. This including but not limited to the relative contributions of each spouse, incomes, needs and wage earning capacities.
BANKS, J., joins this opinion.
NOTES
[1] At the time the facts were stipulated, Vernon was receiving $1,798.37 per month before deductions of (1) Federal withholding of $320.00, (2) Credit Union savings account deposit of $345.00 and (3) Local 632 insurance payment of $6.00.
[2] After withholding for state and federal taxes, Vernon received $14,559.70. Of that amount he took $2,000.00, gave Beatrice $2,000.00 and their daughter $500.00 for her wedding. Vernon spent $9,211.83 of the remaining $10,059.70 after the parties were separated.
[3] FUSFSPA, effective February 1, 1983, provided that state property law would determine rights to a serviceman's pension, overruling that part of McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) which held that the Supremacy Clause prohibited the applicability of state property law to military pension plans.
[1] The only issue before this Court pertains to the equitable division of the pension and deferred compensation plans. Therefore alimony, otherwise a likely possibility for Vernon, is not part of this Court's analysis.