GUTHRIE, et ux. *v.* GUTHRIE, et ux.

No. 40797 May 5, 1958 102 So. 2d 381

*Melvin, Melvin & Melvin,* Laurel, for appellants.

552

*Geo. W. Currie, George G. Currie,* Hattiesburg, for appellees.

Ethridge, J.

The question is whether the chancery court was warranted in setting aside a 1951 consent decree, and a deed in accordance with it, on the ground of mutual mistake. We hold that the undisputed evidence shows no mutual mistake (or fraud) in the events prior to the execution of the consent decree and deed, so they are valid and binding on the parties.

In 1950 appellees J. W. Guthrie and wife, 77 and 73 years of age respectively, filed their bill of complaint in the Chancery Court of Perry County against their son, appellant G. B. Guthrie, and his wife. The bill sought to cancel any claims asserted by defendants to 160 acres of land in Perry County, which complainant J. W. Guthrie had purchased in 1932, and to enjoin defendants from interfering with complainants' possession. The bill charged that the son agreed to assist his father in purchasing the property, and that he advanced to complainants $95 of the total purchase price of $160. The defendants filed an answer and a cross bill. They charged that J. W. Guthrie in the purchase of the land was acting for the defendants, who had paid the purchase price and erected houses and other improvements on the land; that the agreement was that J. W. Guthrie would have the seller make the deed to his son G. B. Guthrie, who was working out of the state. The answer charged that J. W. Guthrie held the legal title as trustee for G. B. Guthrie. The cross bill asked the court to adjudicate that fact.

The case came on for trial in July 1951. After the litigants and other witnesses had testified, the chancellor suggested that the parties might be able to settle the case. Thereupon the attorneys representing both parties conferred and reached an agreement for a consent decree

subject to the approval of their clients. Counsel for complainants and defendants then conferred with their respective clients, returned to the conference room, and announced that an agreement could be reached. The attorneys prepared a rough draft of a decree, which was discussed with the chancellor. The agreement was for J. W. Guthrie and wife to convey to their son G. B. Guthrie the land, but to reserve a life estate in both grantors. The attorneys for both sides also discussed with the chancellor the question of whether the life tenants could cut the timber. One of the attorneys obtained a case dealing with this question and turned it over to the chancellor, who, after reading it, announced that the life tenant only had the right to cut such timber as would be necessary for estovers and repairs on the property; that they would not have the right to cut and sell the timber commercially. The chancellor made this statement in open court in the presence of the litigants and their attorneys. All parties agreed to it and the decree was redrafted accordingly. It was then resubmitted to the chancellor who asked if all parties agreed to it. Advised that they did, he stated it was unnecessary for them to sign it because the ''agreement was before the court''. The chancellor signed the decree. A deed from J. W. Guthrie and wife to G. B. Guthrie and wife was then executed by the grantors, appellees here, which reserved in the grantors a life estate, with the exclusive use and occupancy of the land, the right to income from leases and rents of the tenant property on the land, and the right to lease the oil, gas and mineral rights vested in the life tenants. This was in accord with the final consent decree dated July 5, 1951.

The testimony of Leonard Melvin, Sr., one of counsel for appellants, and of D. D. Fullilove, Jr., court reporter who was present during these events and who typed the decree and deed, undisputedly confirms these circumstances. In addition, the testimony of the other counsel

for appellants and of R. C. Bradley, one of the two attorneys for appellees at the time, substantially confirms these facts. The other attorney for appellees did not testify.

The consent decree and deed were executed on July 5, 1951. In 1952 J. W. Guthrie and wife filed the present suit in the chancery court seeking to set aside the consent decree and deed, or to reform them, on the grounds of mutual mistake and fraud on the part of the defendants, G. B. Guthrie and wife. Defendants' demurrer to this bill was sustained. J. W. Guthrie and wife appealed to this Court, and in December 1955, in Guthrie v. Guthrie, 226 Miss. 190, 84 So. 2d 158 (1955), it was held that the bill of complaint seeking either to set aside or reform the 1951 consent decree and deed was good as against the general demurrer; that the allegations of the bill were not sufficient to sustain a charge of fraud, but they afforded a sufficient basis for a charge of mutual mistake. The bill alleged the parties had agreed that complainants had a right to sell the timber commercially, that attorneys for both complainants and defendants understood the agreement, and it was explained to complainants that they had a right to sell the timber. However, the bill charged, the right of the life tenants to cut the timber was omitted from the decree, because of a mutual mistake. Because these allegations concerning mutual mistake were sufficient as to a general demurrer, this Court in the 1955 decision reversed the chancery court's action sustaining the demurrer, and remanded the case for a trial on the bill or petition to set aside the 1951 consent decree and deed. Complainants' evidence did not support the allegations of their bill.

A trial was had on this issue in October 1956. In addition to the testimony referred to above, J. W. Guthrie and wife testified that in fact they thought they were signing a will rather than a deed in 1951, and that they wholly misunderstood what was being done by the con-

sent decree with respect to their right to cut and sell the timber. Appellants, and their counsel who had represented them in the 1951 proceedings, testified unequivocally that there was no misunderstanding on their part; that the chancellor had announced in open court the life tenants would not have the right to cut timber for commercial sale, but only for use on the premises; and that both sides agreed to the decree with that understanding. The chancery court found that the evidence did not reflect any fraud, but that complainants J. W. Guthrie and wife were mistaken and thought that they would have the right to cut the timber and sell it commercially. The Court said there was a ''mutual mistake existing between the parties, the complainants on the one hand believing that they could cut and remove the timber, and the defendants on the other hand believing the complainants could not cut and remove the timber.''

Hence on October 10, 1956, the chancery court vacated and annulled the 1951 consent decree and deed, and remanded the cause to the docket for a hearing on the merits of the original bill of complaint filed in 1950. Such a hearing was had in June 1957. The final decree of June 5, 1957, cancelled all claims of the defendant-appellants and confirmed title in J. W. Guthrie and wife. However, the court placed an equitable lien on the land in favor of appellants for $2,500, representing expenditures appellants had made on the property over a long period of time. This appeal is from that decree.

Since we have concluded that it was error to set aside the 1951 consent decree and deed, it is not necessary to consider the decree of June 5, 1957, rendered after a trial on the merits upon the original bill of complaint. The parties settled that controversy in the 1951 consent decree.

 █ A consent judgment acquires the incidents of, and will be given the same force and effect as, judgments

rendered after litigation. It is binding and conclusive, operating as res judicata and an estoppel to the same extent as judgments after contest. ██ █ Also, being in the nature of a contract, a consent judgment should be construed as a written contract. So in the absence of fraud, mutual mistake or collusion, a judgment by consent is binding and conclusive upon the parties and those in privity with them, to the same extent as judgments rendered upon controverted facts and after consideration thereof upon a contested trial. A consent judgment or decree is res judicata to the same extent as if entered after contest. 30A Am. Jur., Judgments, Secs. 148-155, 638. Relief upon the ground of mutual mistake should be granted with extreme caution and only in a limited class of cases. Ibid., Sec. 664.

Discussing consent decrees, Griffith, Mississippi Chancery Practice (2d Ed. 1950), Sec. 618, says: "Such a consent possesses the attributes of a contract and, when duly authenticated and especially after being filed, it is binding on the consenting parties, if competent to contract, and cannot be set aside or reviewed, except on a clear showing that it was obtained by fraud, or the substantial equivalent thereof, or was based on mutual mistake." See also A. L. I., Restatement of Judgments, Sec. 118(b), page 571; Sec. 126(e); 49 C. J. S., Judgments, Sec. 330; Rusch v. Prudential Ins. Co. of America, 197 Minn. 81, 266 N. W. 86 (1936).

 The undisputed evidence reflects that attorneys for both sides, the chancellor and the parties were all present when the terms and effect of the consent decree and deed were discussed; that the chancellor correctly stated that under the law the life tenants would not have the right to cut the timber for commercial sale; that the attorneys and the parties agreed to the consent decree and the deed as drafted, following which the chancellor signed the decree and appellees executed the deed. Three was no mutual mistake where complainants believed

they could cut the timber, and the defendants believed they could not. The defendants were not mistaken about this. In fact, it is rather apparent that the complainants were not mistaken either. Certainly the chancellor prior to executing his decree fully discussed and explained its effect to all parties and their counsel. It would be difficult to obtain a binding consent judgment, if the present one were not valid. See 5 Williston on Contracts (5th Ed. 1937), Secs. 1570A, 1573, 1578. Hence the final decree of the chancery court is reversed, as is the decree of October 11, 1956, cancelling the consent decree and deed of July 5, 1951. The consent decree is reinstated and affirmed.

Reversed and judgment rendered for appellants.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.