574 So.2d 688 (1990)
Betty Louise BROWN
v.
Ralph Nayland BROWN.
No. 90-CA-0071.
Supreme Court of Mississippi.
December 27, 1990.
*689 Keith R. Raulston, Heidelberg & Woodliff, Jackson, Darryl A. Hurt, Jr., Hurt & Hurt, Lucedale, Michael E. Wright, Akerman Senterfitt & Eidson, Orlando, Fla., for appellant.
Karl R. Steinberger, Bryant Colingo Williams & Clark, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
In this case, the ex-wife of a retired Naval officer belatedly seeks an equitable division of her former husband's military retirement pension and claims she can avoid the bar of res judicata by an express reservation written into the 1982 consent decree of divorce. We have examined the reservation and find that, in light of Mississippi law, it preserved to the wife no rights she may enforce at this time.
The Chancery Court summarily rejected her claim. We affirm.

II.
Betty Louise Brown was born June 21, 1938, and presently lives in Winter Park, Florida. Betty was the plaintiff below and is the appellant here.
Ralph Nayland Brown was born April 10, 1936, and is an adult resident citizen of George County, Mississippi, residing out from Lucedale. Ralph was the defendant below and is the appellee here.
On June 26, 1956, Ralph and Betty were married and for the better part of the next twenty-five years, Ralph served as an officer in the United States Navy. Four children were born of the marriage. In time Ralph and Betty separated, and in 1982  the year of Ralph's retirement from the Navy  the parties found themselves in a contested divorce proceeding before the Chancery Court of George County, Mississippi, with each party claiming substantial rights in the property of the other. Particularly, Betty sought alimony and the grant of an equitable interest in various items of real and personal property Ralph owned, including by inference his military retirement pension. The case was called for trial, and, after three witnesses testified, the parties began to talk and soon agreed upon the terms of the divorce. They presented to the Chancery Court an "Agreed Final Decree," approved by each, and formally entered by the Court on May 14, 1982. In relevant part, this decree provided:
Betty Louise Brown shall execute a Deed of Conveyance on her interest in the twenty acres of land in George County to Ralph Nayland Brown. Ralph Nayland Brown shall pay to Betty Louise Brown the sum of $6,000.00 in cash as lump sum alimony and said payment to be made within five days of the date hereof, the said Ralph Nayland Brown not be responsible for any further alimony except such rights as may now or hereafter be vested by law in Betty Louise Brown as to the Military retirement of Ralph Nayland Brown.

The above-quoted reservation may only be understood against the backdrop of *690 McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). McCarty held that the Supremacy Clause prohibited the states using their property laws to decree rights in a serviceman's pension, apparently on the view that then-extant federal statutory law controlled the matter. At the time of the Browns' divorce, the Congress had before it various bills designed to overrule or modify McCarty. Effective February 1, 1983, the Congress enacted the Federal Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408 (hereinafter "FUSFSPA") which ended McCarty's reign and provided that states could enforce their property laws with respect to a serviceman's pension, retroactive to June 25, 1981.
On August 11, 1988, Betty returned to the Chancery Court of Jones County and filed her present complaint seeking an interest in Ralph's military retirement pension. She claimed that she was a faithful and dutiful wife for some twenty-five plus years and under Mississippi law was entitled to an equitable division of property jointly accumulated during the marriage. She alleged, specifically, that Ralph's military retirement pension was jointly accumulated personal property. She pointed to the reservation of the 1982 decree and said she was exempted from the res judicata effect that decree would otherwise have. On agreed facts, and cross-motions for summary judgment, the Chancery Court rejected Betty's claim. She now appeals to this Court.

III.
The 1982 divorce decree would ordinarily preclude Betty asserting today any claims that were or may reasonably have been brought in the original action. Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990). In 1982, the Chancery Court had no authority to employ state law and declare rights and interests in and to a serviceman's retirement pension. McCarty v. McCarty, supra. In this setting the parties presented to the Court a consent decree awarding Betty the marital home, certain stocks, lump-sum alimony of $6,000.00, but leaving open
... such rights as may now or hereafter be vested by law in Betty Louise Brown as to the military retirement of Ralph Nayland Brown. [Emphasis supplied]
It is significant that this was an agreed decree, for rules of contracting come into play. See East v. East, 493 So.2d 927, 931-32 (Miss. 1986). We are seldom much inclined on appellate review to read into judgments and decrees terms which are not there, and this is particularly so where the parties themselves wrote the decree. Roberts v. Roberts, 381 So.2d 1333 (Miss. 1980); Guthrie v. Guthrie, 233 Miss. 550, 556-57, 102 So.2d 381, 383-84 (1958). On the other hand, the reservation the Browns wrote is clearly an exception to the normal rules of res judicata, and we should not be grudging in enforcement.
The exception applies to but a single item of personalty, Ralph's military retirement pay, and only to rights therein "vested by law in Betty Louise Brown." "Law," however, is certainly broad enough to include federal and state, statutory or otherwise.
As we perceive FUSFSPA, it did not vest any rights in anyone. It merely removed a federal bar and allowed the states to treat the military retirement pensions of their domiciliaries as personal property subject to state property laws. Powers v. Powers, 465 So.2d 1036, 1037 (Miss. 1985). Insofar as we are aware, the parties hereto were at all relevant times Mississippi domiciliaries. We encounter none of the choice of law problems which led to our decisions in Southern v. Glenn, 568 So.2d 281 (Miss. 1990); and Newman v. Newman, 558 So.2d 821 (Miss. 1990).
Turning to Mississippi law, we read "vested" to include "re-vested." Upon FUSFSPA's removal of the federal bar, did state law operate to (re)vest in Betty any rights in Ralph's pension? We have long recognized that, incident to a divorce, the Chancery Court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties. See, e.g. Brendel v. Brendel, 566 So.2d 1269, 1273 (Miss. 1990); Jones v. Jones, 532 *691 So.2d 574, 580-81 (Miss. 1988); Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987); Watts v. Watts, 466 So.2d 889, 891 (Miss. 1985); Clark v. Clark, 293 So.2d 447, 450 (Miss. 1974). We have never thought of this authority as a source of vested rights. Our cases hold that a spouse is not automatically entitled to an equal division of jointly-accumulated properties, Dillon v. Dillon, 498 So.2d 328, 330 (Miss. 1986); Rives v. Rives, 416 So.2d 653, 657 (Miss. 1982). The matter rather is committed to the discretion and conscience of the Court, having in mind all of the equities and other relevant facts and circumstances. See Robinson v. Irwin, 546 So.2d 683, 685 (Miss. 1989).
After McCarty and until FUSFSPA  a period of some nineteen months  it is true that federal law pre-empted state authority to apply state equitable division principles to divide military retirement pay. FUSFSPA removed the pre-emption bar but that is all. This is not what we normally think of as a (re)vesting of rights in parties.
The first thing lawyers should always remember about the term "vested" is that it has no hard edged definition, no fixed and invariable legal meaning. "Vested" means different things in different contexts. See Hemphill v. Mississippi State Highway Commission, 245 Miss. 33, 47-48, 145 So.2d 455, 461-62 (1962). This caveat noted, we do think of vested interests in contrast to contingent ones. Gordon v. Gordon, 189 Miss. 729, 738, 198 So. 287, 289 (1940). Rights that are "vested" are seen in contradistinction to ones that are "inchoate imperfect and ambulatory." Faulkner v. Faulkner, 192 Miss. 358, 365, 5 So.2d 421, 422 (1942). Not far from today's mark are our cases holding that a wife's claim to alimony is sufficiently vested that she may employ the procedural protections of our lis pendens statute pending an action for divorce. Felder v. Felder's Estate, 195 Miss. 326, 331, 13 So.2d 823, 824 (1943); Gallaspy's Sons Co. v. Massey, 99 Miss. 208, 215-16, 54 So. 805, 807 (1911). Still, not all remedial rules of law vest rights in protected parties. Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 439, 9 So.2d 638, 640 (1942). The term "automatic" comes to mind as we think of vested rights. When one claims a vested right in a litigation, upon proper proof, and in the absence of defenses, the Court but recognizes the right. There is no doubt what right the claimant will win, if he wins. Conceptually, vesting is quite different from a rule of discretion which allows a chancery court, incident to a divorce, to consider the relevant facts and circumstances and, where it is equitable and just to recognize a party's contributions to the accumulation of jointly-held assets, to decree an equitable division.
Betty's claim is further embarrassed. Before, during and after McCarty's reign, we have regarded military retirement benefits as a part of the income stream available to divorcing spouses which the chancery court is charged to consider in fixing the amount of alimony. Petters v. Petters, 560 So.2d 722, 724 (Miss. 1990); Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Colvin v. Colvin, 487 So.2d 840, 841 (Miss. 1986); McKay v. McKay, 312 So.2d 12, 14 (Miss. 1975); Martin v. Martin, 271 So.2d 391, 394 (Miss. 1972); see also, In re Marriage Of Marshall, 166 Ill. App.3d 954, 117 Ill.Dec. 863, 867, 520 N.E.2d 1214, 1218 (1988). If the 1982 divorce decree had merely been entered by the Court following trial, we would be particularly concerned that the lump-sum alimony awarded had been fixed by reference to all of the assets available to the party and that to allow Betty now to obtain rights in Ralph's military retirement pay would likely be double dipping in the sense that we would be giving her rights in properties the value of which was considered in establishing alimony. At the time of the agreed decree in 1982, the parties were aware of Ralph's entitlement to military retirement pay. In the proceedings below, the Court expressly found that "it was considered as a part of the parties' net worth."
In sum, we hold that, in a technical sense, FUSFSPA does not bring this case within the exception because it did not vest any rights in Betty. Moreover, Mississippi law neither vested nor revested any rights in her. This case has been troublesome, but we believe that adherence to settled *692 law and legal principles requires that we reject Betty's appeal.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, PITTMAN and BLASS, JJ., concur.
SULLIVAN, J., dissents without written opinion.
ANDERSON, J., not participating.