838 So.2d 983 (2001)
Betty VAUGHN, Administratrix of the Estate of Cassalena WILLIAMS and Cassalena Williams (Deceased), Appellants,
v.
MONTICELLO INSURANCE COMPANY, Appellee.
No. 2000-CA-01758-COA.
Court of Appeals of Mississippi.
October 23, 2001.
Rehearing Denied January 8, 2002.
*984 Cynthia Mitchell, Clarksdale, Attorney for Appellants.
Gerald H. Jacks, Kathy R. Clark, Attorneys for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the court:
¶ 1. Cassalena Williams brought suit against Monticello Insurance Company for bad faith filing of an interpleader action. She asserts that the company should have paid her all the proceeds of a policy. Monticello was granted summary judgment. On appeal, Williams argues that issues of material fact existed as to the good faith of *985 the interpleader. We find no error and affirm.

FACTS
¶ 2. Cassalena Williams and her children lived in a home that she and her three brothers had inherited as equal cotenants. Williams obtained insurance from Monticello Insurance Company on the home in her name. The home was destroyed by fire on May 8, 1990. An attorney for her brothers contacted Monticello and asserted an interest in the property. He said that a suit would immediately be brought if Monticello paid only Williams. On July 26, 1990, he demanded that the funds be made payable to all the heirs. At some point during the dispute, Williams agreed to a joint check. By a letter from her attorney dated August 6, 1990, that agreement was rescinded.
¶ 3. Monticello filed an interpleader on August 17, 1990, in chancery court, depositing the full amount of the policy into the court's registry. Monticello was later dismissed, but the order reserved Williams's bad faith claim against the company. In 1991, an agreement was reached among the siblings on sharing the insurance proceeds. The agreement was incorporated into a court order.
¶ 4. Williams filed this action in 1993 alleging that Monticello acted in bad faith by failing to pay her all of the proceeds from the insurance policy and for filing the interpleader. In 1994 Williams died, and her administratrix was substituted. Monticello's motion for summary judgment was granted in 2000. Williams's appeal has been deflected here.

DISCUSSION

1. Validity of summary judgment order.
¶ 5. Before addressing Williams's complaint about the merits of the summary judgment, we first examine a procedural issue that she raises. A hearing was held on the motion for summary judgment by Circuit Court Judge Jack Hatcher. Judge Hatcher died before ruling on the motion. Howard Q. Davis was appointed for a two month term which ended on June 30, 2000. Judge Davis issued an order granting summary judgment which he signed and dated June 8, 2000. For reasons unknown, the order was not filed until August 8, 2000 after the expiration of Judge Davis's term. Albert B. Smith was appointed to serve beginning at the end of Judge Davis's term.
¶ 6. As a result of the late filing, Williams filed a motion to have the order set aside. Judge Smith denied the motion, finding Judge Davis's order to be valid. In the same order he adopted the findings of fact and conclusions of law that are found in the June 8, 2000 order.
¶ 7. The function of the judgment itself and its filing and entry are explained under the comments to Mississippi Rules of Civil Procedure.
A judgment is the final determination of an action, and thus has the effect of terminating the litigation; it is "the act of the court." "Filing" simply refers to the delivery of the judgment to the clerk for entry and preservation. The "entry" of the judgment is the ministerial notation of the judgment by the clerk of the court pursuant to Rule 58; however it is crucial for the effectiveness of the judgment and for measuring the time periods for appeal and the filing of various motions.
M.R.C.P. 54, cmt. Although the entry by the clerk is a ministerial act, this comment states that it is necessary for the effectiveness of the judgment. What is not discussed is whether entry by the clerk after the issuing judge's authority has expired *986 can give effect as of the earlier date of issuance.
¶ 8. For purposes of argument only, we accept that since Judge Davis's order was not filed and then entered until after the judge's term expired, it was not effective. We start with that concession arguendo only because the clearer point is that a succeeding judge has the authority to adopt the findings of a prior judge. Milam v. Young, 203 Miss. 387, 391, 35 So.2d 67, 68 (1948). In Milam, a chancellor died before an order was entered but after he had written out and sent to the parties copies of the opinion and ruling. Id. at 390, 35 So.2d 67. The successor chancellor entered the order exactly as the previous chancellor had directed. The Supreme Court held that to be a valid order. Id. at 391, 35 So.2d at 68. In the order denying the motion to set aside summary judgment, Judge Smith specifically adopted Judge Davis's findings of fact and conclusions of law as stated in his June 8, 1990 order. By doing so, the order was as valid as if it had been entered by Judge Davis before his temporary term ended.
¶ 9. Whether it was valid on the merits is our next issue.

2. Res Judicata.
¶ 10. The summary judgment found that Williams's agreement in the interpleader suit to share the insurance benefits with her brothers was res judicata on the legal issues in this present suit. The judge made other dispositive findings as well, but we consider this one first.
¶ 11. There are two separate claims that Williams makes in this suit. One is a continuing insistence, despite the interpleader, that she is entitled to all of the insurance proceeds. The other claim is for punitive damages for the bad faith refusal to pay her initially. We look at each.

a. Contractual damages.
¶ 12. Monticello was granted summary judgment and dismissed in the interpleader action before a settlement agreement was reached between the siblings. The order dismissed Monticello without prejudice except on the claims for the policy proceeds paid into the court. Williams in the present suit requests compensatory damages in the amount of $35,000, the limit of the insurance policy.
¶ 13. Res judicata and its companion doctrine of collateral estoppel are similar but distinguishable. Each give finality to prior judgments when new suits seek to relitigate what has been settled.
¶ 14. Res judicata requires four identities: (1) subject matter; (2) cause of action; (3) parties; and (4) quality or character of person against whom the claim is made. Marcum v. Mississippi Valley Gas Co., 672 So.2d 730, 732-33 (Miss.1996).
¶ 15. The identities are fewer under collateral estoppel: "parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." Hollis v. Hollis, 650 So.2d 1371, 1377 (Miss.1995), quoting Dunaway v. W.H. Hopper & Assoc., Inc., 422 So.2d 749, 751 (Miss.1982). Whether identity of parties is always needed for collateral estoppel has been questioned, but need not be resolved here. Jeffrey Jackson and Mary Miller, Collateral Estoppel and Res Judicata, 2 ENCYCLOPEDIA OF MISSISSIPPI LAW § 14.4 (2001).
¶ 16. Both doctrines also require that the former litigation result in a final judgment on the merits. Little v. Clodfelter, 782 So.2d 175, 179 (Miss.App.2001). Summary judgment was granted in the *987 interpleader to Monticello in February 1991, reserving the bad faith issue to Williams. That was a judgment on the merits that resolved Monticello's liability for the insurance proceeds. Then in December 1991, the remaining parties Williams and her three brothersreached a settlement agreement. There is authority that a consent judgment has res judicata effect. Dunn v. BL Dev. Corp., 747 So.2d 284, 285 (Miss.Ct.App.1999), citing Guthrie v. Guthrie, 233 Miss. 550, 553, 102 So.2d 381, 383 (1958). However, there is also authority that a settlement does not satisfy the "actually litigated" standard for collateral estoppel, the reasoning being that what parties are willing to agree as a matter of balancing litigating risks and costs should not have the same effect as a court-entered judgment after a vigorous contest of the issues. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982).
¶ 17. If the settlement includes specific disavowals of liability on all parties, the Restatement position may have greater cogency. Here, the final judgment in the interpleader action revealed an agreement by the four siblings to divide the insurance proceeds equally. The court order does not disclose whether there were denials of liability by the parties.
¶ 18. If the prerequisites are met, res judicata will bar litigating in a subsequent action all claims that were or might have been brought in a prior suit. Little v. V & G Welding Supply, Inc., 704 So.2d 1336, 1337 (Miss.1997). Collateral estoppel only bars relitigation of issues that were actually decided and essential in the prior action. Hollis v. Hollis, 650 So.2d 1371, 1377 (Miss.1995).
¶ 19. We analyze the four identities for the present case and the earlier interpleader. The subject matter is the same: a claim for the proceeds of the insurance policy. In both actions, Williams claims that she as the named beneficiary was contractually entitled to the full amount of the proceeds, thereby making the cause of action the same. As to the character of the entity against whom the claim is brought, Monticello in both suits has been sued as the insurance company that issued the relevant policy and was obligated to pay benefits under it.
¶ 20. The one identity issue about which some dispute exists is whether both parties in the present suit were parties in the interpleader. Monticello was no longer a party at the conclusion of the suit, that is, in December 1991, but it was the interpleader plaintiff under Mississippi Rule of Civil Procedure 22. It was Monticello who joined Williams and her brothers as defendants. Monticello then moved to have the funds accepted and itself dismissed from further liability on the proceeds. Williams contested the motion, and sought to counterclaim for bad faith in initiating the interpleader and failing to pay all proceeds to her. The February 1991 judgment entered on the motion was therefore contested and resulted in the company's dismissal with prejudice "to the extent of the policy proceeds which Monticello paid into court." Williams did not appeal from that judgment. Monticello and Williams thus were both parties in the interpleader for purposes of determining whether that suit would resolve how the insurance proceeds should be distributed. Res judicata bars Williams's continuing insistence that she is entitled to all the proceeds.

b. Punitive damages.
¶ 21. The interpleader judgment explicitly preserved Williams's bad faith claim. Therefore res judicata does not bar the bad faith claim now. In fact, in the present suit claiming bad faith, Monticello's motion for summary judgment alleged res *988 judicata only as to the actual damage claim. The punitive damage claim was alleged to fail because there was no conduct by Monticello that could support the claim. That will now be examined.

3. Bad Faith
¶ 22. We review whether there was bad faith by Monticello when it filed an interpleader instead of paying all the proceeds to Williams. Monticello claims that they had multiple parties claiming the funds and made use of the action created for situations just as this.
¶ 23. Under Mississippi law, in order for a punitive damages claim against an insurer to go to a jury, a judge must find (1) that the insurance company did not have a "legitimate or arguable reason to deny payment of the claim" and (2) that the plaintiff made a "showing of malice, gross negligence, or wanton disregard of the rights of the insured." Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 624 (Miss.1988), cert. denied, 488 U.S. 1009, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989). The Supreme Court has allowed punitive damages when a company withheld funds for eight months without reason. Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829, 835 (Miss.1979). In addition, punitive damages were permitted when a claim was erroneously denied due to a known computer programming error that went uncorrected. Mutual Life Ins. Co. of New York v. Estate of Wesson, 517 So.2d 521, 528-29 (Miss.1987).
¶ 24. What does not support punitive damages is an insurance company's reaching a good faith though incorrect decision in denying a claim. State Farm Mut. Auto. Ins. Co. v. Grimes, 722 So.2d 637, 641 (Miss.1998). In addition, when a legitimate dispute exists between the parties as to the amount due under the policy, the court has denied punitive damages. Cossitt v. Alfa Ins. Corp., 726 So.2d 132, 138-39 (Miss.1998). Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay. Mutual Life Ins. Co., 517 So.2d at 528. The question here is whether Monticello's actions and delay were reasonable.
¶ 25. Williams relies on a Supreme Court case that reversed summary judgment in favor of an insurance company that had earlier filed an interpleader action. Necaise v. U.S.A.A. Cas. Co., 644 So.2d 253, 258 (Miss.1992). In Necaise, a man's current wife had purchased insurance for approximately one half the value of the home of her husband. 644 So.2d at 255. The home was jointly owned by the husband and his former wife. Id. at 254. After a fire destroyed the home, the insurance company issued a check in the name of the husband, wife and former wife. Id. at 255. The currently married couple refused the check, demanding that the company issue a new check in their names only. Id. A suit was filed by the couple for bad faith. Id. at 254. The company counterclaimed in interpleader by depositing the funds with the clerk. Necaise, 644 So.2d at 254. By agreed order the former wife joined the action. Id. The chancellor found that the former wife was entitled to one half the proceeds due to her one half interest in the home. Id. at 257. From this ruling and a ruling in a separate action, the couple appealed. Id. at 254.
¶ 26. The Supreme Court found that the insurance company erred by including the former wife's name on the check; the Court disagreed with the chancellor that the former wife was entitled to the proceeds; and most importantly here, the Court held that the interpleader did not insulate the insurance company from potential bad faith liability. Id. at 257. As *989 part of its analysis, the Court concluded that insurance is not due to a person merely because he or she has an ownership interest in property. Id. That conclusion was derived from Sullivan v. Estate of Eason, 558 So.2d 830 (Miss.1990). In Sullivan, five siblings inherited property through intestate succession. Sullivan, 558 So.2d at 831. One sibling had purchased insurance for the property in her name. Id. After a fire destroyed the property, the company issued the check in all the heirs' names, resulting in litigation. Id. at 831-32. There was evidence that the insured had purchased the policy with estate money with an agreement among the heirs as to the beneficiaries of the insurance. Id.
¶ 27. The Supreme Court adopted a test to find whether insurance proceeds should be shared by ones other than the named insured. The fact intensive test has these factors:
(1) whether the insurance was obtained for the sole benefit of the person who procured it; (2) whether by express or implied agreement the person who took out the insurance did so for the benefit of the owners of the other interests in the property; and (3) whether the owners of the other interests contributed to the cost of the insurance.
Id. at 844, quoting Summerlin v. Bowden, 353 So.2d 1175, 1179 (Ala.Civ.App.1978).
¶ 28. The Necaise court held that these Sullivan factors did not favor the former wife's claim for a share of the proceeds. Necaise, 644 So.2d at 257. Among the reasons were that the current wife had purchased the policy for the couple's benefit with her own money for approximately the value of the husband's one-half interest in the property. Id. If a third party "wishes to claim a portion of the benefits under a policy issued to another, it is incumbent upon her to stake her claim, not on the insurance company" to stake it for her. Id. On rehearing, the court found that the company did not have a "reasonable basis" to fear liability from the former wife. Id. at 259.
¶ 29. In order to determine whether a bad faith issue exists here, we review the Sullivan factors as they appeared to Monticello immediately prior to the interpleader action. The policy had only one named insured, Williams. It was for almost the full value of the home, as an insurance adjuster found the value of the home to be $30,000; the insurance policy provided coverage of $25,000 for the dwelling and $10,000 for the contents. Thus, the policy was not insuring just Williams's fractional interest as was the situation in Necaise. One month after the fire, Williams's three brothers asserted their claim through an attorney who demanded the check be made payable to all the heirs. In Necaise, the insurance company itself raised the potential claim of the former wife. In addition it is undisputed that the company was informed that the brothers paid the first premium, though that assertion was contradicted by Williams. That too distinguishes Monticello's situation from that facing the insurer in Necaise in which the named insured clearly paid the premium.
¶ 30. Under these circumstances, a reasonable claim by the brothers existed to share in the proceeds. Williams herself at some stage agreed to a joint check, only to rescind the offer on August 6, 1990. Then in a letter dated August 15, 1990, Monticello's attorney confirmed that he was informed that the brother's had paid the initial premium. Two days later, Monticello filed an interpleader and deposited the funds for a determination of its distribution. Only three months passed between the date of the fire and the date the interpleader action was filed.
*990 ¶ 31. In these several ways, this suit is readily distinguishable from Necaise. We cannot find that Monticello's actions exposed them to the possibility of punitive damages for bad faith in failing to pay Williams only. Under Sullivan, it was clear to Monticello that just who was entitled to the proceeds was a matter of legitimate dispute. That is exactly what interpleader is for.
¶ 32. We need not address the good faith reliance on advice of counsel issue, as the foregoing makes that issue immaterial.
¶ 33. Summary judgment was appropriate.
¶ 34. THE JUDGMENT OF COAHOMA COUNTY CIRCUIT COURT IS AFFIRMED. APPELLANTS ARE TAXED WITH ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and CHANDLER, JJ., Concur.
BRANTLEY, J., Not Participating.