**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CA-00524-SCT**

*CLARENCE SAMPLES*

*v.*

*SARA DAVIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2002 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RENEE M. PORTER |
| ATTORNEY FOR APPELLEE: | NANCY E. STEEN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | VACATED AND REMANDED - 12/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     On December 5, 1995, Clarence Samples ("Samples") and Sara Davis ("Davis") were divorced by a judgment of Covington County Chancery Court, thereby ending a fourteen year marriage. Two children were born to their union: Matthew Kyle Samples, born March 4, 1985, and Samuel Asa Samples, born November 2, 1989.  Pursuant to the agreement for custody and maintenance of children and for settlement of property rights, which was ratified by and incorporated into the judgment of divorce, Davis retained physical custody of the children. Samples was awarded visitation and ordered to pay $300 per month in child support to Davis. In addition to his child support payments, Samples was ordered to pay $100 per month toward

the medical insurance premiums on behalf of the children and one-half of all medical expenses not covered by insurance.

¶2.    In June of 1997, Samples, citing Davis's move to Oxford, Mississippi, filed for a modification of the transportation provisions regarding visitation in the judgment of divorce. Davis filed a cross-complaint for modification wherein she asked the Court to increase child support from $300 to $700; Davis further asked the court to cite Samples for contempt and decrease his visitation privileges.  On October 7, 1998, Samples filed a petition for modification of child custody and child support based on the older child's election; however, after the child withdrew his election, Samples withdrew his petition.  The respective petitions of the parties came on for hearing at which time the parties reached the agreement set forth in the agreed judgment of modification entered in the general docket on October 23, 1998.[1]

¶3.    On October 7, 1999, Samples filed a motion for citation of contempt, to enforce visitation, and reduce child support, wherein he asked the court to cite Davis in contempt due to her failure to allow Samples visitation and telephone contact with the two children.  Samples further requested a decrease in child support due to a decline in income.  That motion was evidently never served, and a motion to amend those pleadings was filed on February 11, 2000.

¶4.    On March 13, 2000, Samples filed an amended complaint incorporating his previous claims for relief, but also seeking a modification of physical custody of the children.  On May 2, 2000, Davis answered the amended complaint denying that Samples was entitled to a

---

[1] Among other things, Samples was required to pay more in child support and the visitation scheduled was modified to one more feasible for the relatively long distance between the parties' respective residences.

modification of custody, and again counter-claimed to cite Samples in contempt. On November 10, 2000, a petition for contempt and other relief was filed against Samples on behalf of Davis by the Department of Human Services, based upon an alleged failure to pay child support. A guardian ad litem was appointed for the children on February 23, 2001.

¶5. On December 17, 2001, Samples filed an amended complaint seeking damages from Davis based on alienation of affection and interference of business. Davis answered Samples' complaint denying that he was entitled to the relief requested and countered to dismiss and for sanctions on March 26, 2002.

¶6. Subsequently, on May 7, 2002, the parties came before the court for a trial on the merits; however, no trial was held due to a possible settlement of the issues between the parties. Davis filed a motion for enforcement of settlement, or alternatively, for trial setting and sanctions[2] on July 3, 2002. On September 12, 2002, the chancellor signed the judgment, which was thereafter entered on the general docket on September 13, 2002. Although signature lines for both parties and their respective attorneys appear on the Judgment under the word "AGREED," the only signature on the judgment was that of the chancellor.

¶7. Samples timely filed a Mississippi Rule of Civil Procedure 59 motion on September 20, 2002, although mistakenly referred in the body of the motion "as per Rule 62," thereby asking the court to set aside the judgment and grant him a new trial because the agreement was not dictated into the record or memorialized in writing. The court denied the motion by order filed on February 20, 2003.

---

[2] That document reflects that the parties were before the Court on May 7, 2002, and reached a settlement on that date; however, Samples refused to sign or approve the judgment.

¶8.     Following the denial of his post-trial motion, Samples appeals and raises the following issue on appeal:

> I.   Whether the lower court committed manifest error and thus reversible error by approving and signing a consent judgment which was not approved or signed by Samples or his attorney.

## DISCUSSION

¶9.     In domestic relations cases, this Court's scope of review is limited by the substantial evidence/manifest error rule. *Jundoosing v. Jundoosing*, 826 So. 2d 85, 88 (Miss. 2002) (collecting authorities).   This Court may reverse a chancellor's finding only when it is manifestly wrong, clearly erroneous or the chancellor applied an erroneous legal standard. *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994).  "In appeals from Chancery Court, our scope of review is limited.  We will not reverse a Chancellor's findings of fact where they are supported by *substantial credible evidence* in the record." *Hammett v. Woods*, 602 So. 2d 825, 827 (Miss. 1992) (citing *Clark v. Myrick*, 523 So. 2d 79, 80 (Miss. 1988)) (emphasis added).  "This Court will not disturb the chancellor's opinion when supported by *substantial evidence* unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss. 1996) (citations omitted) (emphasis added).   In order for this Court to say that the chancellor has abused his discretion, there must be insufficient evidence to support his conclusions. *Tucker v. Tucker*, 453 So. 2d 1294, 1296-97 (Miss. 1984).

¶10.    According to Mississippi Uniform Chancery Court Rule 5.03, "Every consent Judgment must be approved and signed by counsel for all parties to the suit who may be represented by counsel and interested in or affected thereby *before* being presented to the Chancellor for his

4

signature. The Court may also require the parties to sign." (Emphasis added). Furthermore, according to Mississippi Uniform Chancery Court Rule 3.09, "Oral agreements of counsel made in the presence of the Court must be recorded by the court reporter or an Order entered in accordance therewith approved by counsel. All other agreements should be reduced to writing and filed among the papers in the case."

¶11. Samples alleges that he was denied due process of law and a trial by the lower court. Samples further alleges that the chancery court entered a judgment–one disguised as an agreed judgment–that was not approved as to form or agreed to by either himself or his attorney and without any record or authority to support the same.

¶12. In *Guilford County v. Eller*, 146 N.C. App. 579, 553 S.E.2d 235 (2001), the North Carolina Court of Appeals was faced with a similar issue of whether it was error for the trial court to sign and enter a written judgment not consented to by all parties. In its opinion, the court stated:

> A consent judgment is a contract of the parties entered upon the records of a court of competent jurisdiction with its sanction and approval. It is well-settled that "'[t]he power of the court to sign a consent judgment depends upon the unqualified consent of the parties thereto; and *the judgment is void if such consent does not exist at the time the court sanctions or approves the agreement and promulgates it as a judgment*.'" "*[A] consent judgment is void if a party withdraws consent before the judgment is entered*." If a consent judgment is set aside, it must be set aside in its entirety. The person who challenges the validity of a consent judgment, bears the burden of proof to show that it is invalid.

*Id.* at 581, 236 (citations omitted) (emphasis added).

¶13. In discussing a similar issue as in the present case, the Court of Appeals has stated:

> ¶ 24. The issue this raises is whether a party can through counsel first agree to a judgment and then, prior to the entry of the order reflecting that judgment,

5

withdraw his consent. What caused the withdrawal of consent to become apparent here is that Mr. McDonald's signature on the order was sought. Had the special chancellor himself prepared the order and entered it without seeking the parties' signature, *so long as it properly reflected the agreement stated in open court*, Mr. McDonald would have been limited to making an argument under Rule 60(b) that mutual mistake, fraud, or some other adequate ground permitted the modification of the order. M.R.C.P. 60; ***Dunn v. BL Development Corp.***, 747 So. 2d 284, 285 (Miss. Ct. App. 1999). Should these sorts of limitations on challenging the order apply even prior to its formal entry?

¶ 25. A consent judgment is in the nature of a contract. ***Parker v. Parker***, 434 So. 2d 1361, 1362 (Miss. 1983); ***Guthrie v. Guthrie***, 233 Miss. 550, 553, 102 So. 2d 381, 383 (1958). *Here, a settlement was announced in open court and all that remained was to reduce its orally stated terms to writing for judicial signature*. We consider that question under traditional contract rules:

Whether contracting parties are bound by an informal agreement prior to the execution of a contemplated formal writing is a matter of intention to be determined by the surrounding facts and circumstances of each particular case. ***WRH Properties, Inc. v. Estate of Johnson***, 759 So. 2d 394, 397 (Miss. 2000) (quoting ***Mid-Continent Tel. Corp. v. Home Tel. Co.***, 319 F. Supp. 1176, 1189 (N.D. Miss.1970)). *We find that the circumstances of announcing in open court the settlement of the dispute that is the purpose for that hearing, with a recital of the terms of the settlement into the record, followed by an agreement to end the hearing, reflects an intention to be bound at that time.*

¶ 26. Absent any showing that the final written order did not reflect the agreement announced in court, or any identification of a matter cognizable under Rule 60 that could lead to setting aside a consent decree after being entered--and neither showing exists here--we find that the parties were bound by their agreement even before it was reduced to a formal written order.

***McDonald v. McDonald***, 850 So. 2d 1182, 1189 (Miss. Ct. App. 2002) (emphases added), *aff'd*, 876 So. 2d 296 (Miss. 2004). The ***McDonald*** Court went on to rule that McDonald was bound by the agreement because the *terms of the agreement were announced in open court and dictated into the record*.

¶14. Although the issue presented in the case sub judice and ***McDonald*** appear similar at first glance, the two cases are distinguishable. In ***McDonald***, although McDonald never signed the judgment and it was signed by the chancellor after McDonald withdrew his consent, the

Court of Appeals ruled against McDonald because the *terms of the agreement were announced in open court and recorded by the court reporter*. In the case sub judice, no terms were ever announced in open court and recorded by the court reporter; furthermore, no agreement was signed by Samples or his attorney. There is no transcript in this matter memorializing the alleged agreement; given the fact that there is no transcript, there is no record of the terms to which Samples allegedly agreed, i.e., in the absence of a record, we are without proof of substantial credible evidence to support the chancellor's order. According to Mississippi Uniform Chancery Court Rules 3.09 and 5.03, if there was an oral agreement, it should have been recorded by the Court reporter or reduced to writing and approved by Samples' counsel. Neither of these methods were employed. Therefore, we will in effect "wipe the slate clean and put the parties back where they were prior to trial." *Massingill v. Massingill*, 594 So. 2d 1173, 1177 (Miss. 1992).

## CONCLUSION

¶15. If parties reach an agreement, the agreement containing the terms should be signed by the parties' attorney(s) or in appropriate cases, the parties, or recorded by the court reporter. Here, there is no record of any terms of the agreement or any signature on the judgment, which showed that the parties had reached an agreement to resolve all outstanding issues. Consequently, the judgment of the Chancery Court of Covington County, Mississippi, is vacated, and this case is remanded for further proceedings consistent with this opinion.

¶16. **VACATED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**