LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. On May 8, 2005, Julvanna, LLC brought suit in the Chancery Court of Harrison County against Economy Inns, Inc., for specific performance of a sales contract. Prior to trial, both parties reached a settlement agreement, which was reduced to an agreed judgment on March 31, 2006. The parties also entered into an agreement regarding the mutual release of claims. Julvanna subsequently filed a motion to enforce the terms of the agreed judgment. Economy filed a motion to dismiss and a counterclaim seeking the $250,000 earnest money deposit. After a hearing on May 22, 2007, the chancellor denied Julvanna’s motion to enforce the agreed judgment, terminated the sales contract, and allowed Economy to retain the $250,000 earnest money deposit. Jul-vanna now appeals, asserting the following: (1) the chancellor erred in denying its motion to enforce the judgment, and (2) the chancellor erred in awarding damages to Economy.
 

 FACTS
 

 ¶ 2. On December 14, 2004, Julvanna entered into a contract to purchase a Super 8 motel located in Biloxi, Mississippi from Economy. Another property was also included in the sales contract, but it is not relevant to this appeal. The original contract called for a closing date on or before July 25, 2005. In April 2005, Economy, unable to secure an IRS 1031 exchange, notified Julvanna that no closing would occur.
 

 ¶ 3. Julvanna then filed its complaint for specific performance, and Economy filed its motion to dismiss and counterclaim. On August 29, 2005, the Super 8 sustained substantial damage from Hurricane Katrina. Economy entered into a construction and lease agreement with Southern Construction Services, Inc. (Southern), to rebuild the Super 8 as it existed prior to Hurricane Katrina. Southern was assigned the insurance proceeds and was to lease the Super 8 beginning on September 25, 2005, until October 25, 2006, for $500,000. Economy and Southern would share the costs of construction beyond the amount of the insurance proceeds.
 

 ¶ 4. Economy and Julvanna entered into the agreed judgment on March 31, 2006. The agreed judgment provided that the original sales contract from December 14, 2004, was in full force and effect and that the terms, as modified by the agreed judgment, were controlling. The agreed judgment stated the following: Julvanna was to purchase the Super 8 for 5.5 million dollars; closing was to occur within 90 days of a written request by Economy, but no later than December 31, 2006; Economy’s failure to effectuate an IRS 1031 exchange would not extend the closing date; Economy was to obtain clarification from Southern concerning a section of the
 
 *393
 
 construction and lease agreement; Julvan-na was to take the Super 8 property subject to the construction agreement; and the judgment provided for prorated lease payments should the closing occur before Southern’s lease expired. In conjunction with this agreed judgment, the parties entered into a “Full and Final Mutual Release,” wherein the parties agreed to release the other from any claims, causes of action, and liability relating to the matter at hand. The mutual release also stated that the agreed judgment would represent a compromise and settlement of all doubtful claims.
 

 ¶ 5. On December 4, 2006, Economy notified Julvanna that the repairs were to be finished for the closing to occur by the end of December. Economy further advised Julvanna that its franchise had been terminated. The new owner of Super 8 franchises, Wyndham Hotels (Wyndham), had upgraded its standards for Super 8 motels, and the pre-Katrina status of the Super 8 would be insufficient to meet the new Super 8 quality standards. Economy notified Julvanna that it would help Julvanna reinstate and transfer the franchise if Julvan-na paid the $5,000 transfer fee. Economy ultimately entered into negotiations with Wyndham to reacquire the franchise on condition of certain updates being made to the property. Julvanna notified Economy that the closing could not occur by December 31, 2006, because of work yet to be completed to the Super 8. After receiving a copy of the inspection report, Julvanna notified Economy that a closing in January 2007 was acceptable. No closing occurred. Instead, the parties sent correspondence back and forth for the next month quibbling over the condition of the Super 8. Ultimately, Economy notified Julvanna that it considered the sales contract terminated when Julvanna failed to notify Economy by January 31, 2007, of its intent to close by February 24, 2007. Julvanna then filed its motion to enforce the agreed judgment.
 

 STANDARD OF REVIEW
 

 ¶ 6. The Court will not disturb a chancellor’s findings if they are supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002). The principle of “manifest error” applies only to findings of fact.
 
 Boggs v. Eaton,
 
 379 So.2d 520, 522 (Miss.1980). However, questions of law, including questions of contract construction, are reviewed de novo.
 
 McMurphy v. Three Rivers Planning and Dev. Dist., Inc.,
 
 966 So.2d 192, 195(¶ 12) (Miss.Ct.App.2007).
 

 DISCUSSION
 

 I. MOTION TO ENFORCE THE JUDGMENT
 

 ¶ 7. In its first issue on appeal, Julvanna argues that the chancellor erred in denying its motion to enforce the agreed judgment. Specifically, Julvanna claims that the chancellor misinterpreted the “as-is, where-is” language in the original contract; the agreed judgment did not contain the “as-is, where-is” language; and Economy obstructed the performance of the agreed judgment by failing to maintain the Super 8 franchise status.
 

 ¶ 8. Agreed judgments are “ ‘in the nature of a contract’ and are binding and conclusive in the absence of fraud, mutual mistake, or collusion.”
 
 Ruff v. Estate of Ruff,
 
 989 So.2d 366, 372(¶23) (Miss.2008) (citing
 
 Guthrie v. Guthrie,
 
 233 Miss. 550, 557, 102 So.2d 381, 383 (1958)).
 

 ¶ 9. The courts use a three-step approach to contract interpretation:
 

 
 *394
 
 First, the “four corners” test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties’ intent, the court should apply the discretionary “canons” of contract construction. Finally, if the contract continues to evade clarity as to the parties’ intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties’ intentions in the construction of the contract.
 

 Tupelo Redevelopment Agency v. Abernathy,
 
 913 So.2d 278, 284(¶ 13) (Miss.2005) (internal citations omitted).
 

 ¶ 10. Under the terms of the agreed judgment, the parties agreed to release each other from all pending claims. The agreed judgment also reaffirmed the terms of the original purchase agreement, including the condition of the property. The original sales contract called for the property to be delivered in “as is, where is” condition. After Hurricane Katrina damaged the Super 8, Economy offered Jul-vanna the option to walk away or take the damaged property along with any insurance proceeds. Julvanna failed to select an option. Economy then entered into the agreement with Southern to rebuild the Super 8 to its pre-Katrina condition. In the agreed judgment, Julvanna agreed to take the Super 8 subject to the Economy-Southern agreement.
 

 ¶ 11. Although Julvanna contends that the Super 8 was to be completely finished prior to closing, using the “four corners” test, the intent of the parties was for Jul-vanna to take the Super 8 subject to the Economy-Southern agreement in an “as is, where is” condition. The agreed judgment contemplated that the closing might occur before the expiration of Southern’s lease. If that were the case, then Julvanna would have assumed Economy’s role in the agreement and received a pro-rata share of the lease payments while Southern finished completing the repairs to the Super 8.
 

 ¶ 12. The Economy-Southern agreement called for Southern to rebuild the Super 8 to the condition as it existed on August 28, 2005, and to be franchise-compliant with Super 8 standards. Section 4.3 of this agreement stated that Economy and Southern “shall bear equally any additional costs in the construction, not covered by insurance, resulting from any law, ordinance, rule, or regulation that requires an improvement or modification in the building construction over the condition that existed on August 28, 2005.” In assuming the risks and benefits of the Economy-Southern agreement, Julvanna understood that it would be required to share costs under Section 4.3, if applicable, but it wanted clarification that the circumstances under which that might happen were limited. The agreed judgment reiterated the language of Section 4.3, stating that “the provision only applies to improvements not covered by insurance which also result from any law, ordinance, rule or regulation that requires an improvement or modification of the building construction over the condition that existed on August 28, 2005.” Julvanna’s counsel conceded at trial that “[i]f Southern doesn’t do their job ... we [Julvanna] stand in the shoes of Economy.”
 

 ¶ 13. Julvanna clearly did not want to be responsible for any additional improvements required by the new, updated franchise requirements. At trial, Julvanna admitted that Economy was not required to provide a franchise agreement nor was it required to bring the Super 8 into compli-
 
 *395
 
 anee with the new Wyndham standards. However, Julvanna contends on appeal that the property was to be franchise-compliant. As stated previously, any increased costs caused by improvements to the property were to be paid by either Economy and Southern, or Julvanna and Southern, depending upon when the closing was to occur.
 

 ¶ 14. We note that, regardless of Jul-vanna’s interpretation of the agreed judgment, Julvanna did not put on any proof that the Super 8 did not meet the standards of the Economy-Southern agreement. There was no proof of the condition of the Super 8 on August 28, 2005, nor was there any proof of what the Super 8 standards were at that time.
 

 ¶ 15. Julvanna was unwilling to complete the sale of the property by December 81, 2006, or in January or February 2007. Julvanna breached the agreed judgment by failing to accept the property subject to the obligations and liabilities of the agreed judgment, and Economy was left with no choice but to consider the contract terminated. The chancellor came to this conclusion as well and properly denied Julvanna’s motion to enforce the agreed judgment.
 

 II. DAMAGES TO ECONOMY
 

 ¶ 16. The chancellor found that Economy, pursuant to the terms of the agreed judgment, was entitled to have the contract terminated and retain the $250,000 earnest money. Julvanna argues that the issue of money damages was not properly before the chancellor. Julvanna asserts that Economy did not have the right to file a motion to dismiss and a counterclaim in response to Julvanna’s motion to enforce the agreed judgment. However, Julvanna failed to raise this issue at trial. It is well settled that this Court does not review matters on appeal that were not first raised in the lower court.
 
 Daniels v. Bains,
 
 967 So.2d 77, 81 (¶ 13) (Miss.Ct.App.2007).
 

 ¶ 17. Regardless of the procedural bar, Economy filed a response to Julvan-na’s motion asking the chancellor to overrule the motion to enforce the agreed judgment. Economy interpreted Julvan-na’s motion as a motion for specific performance, asserted that Julvanna breached the contract, and argued it was entitled to the $250,000 earnest money. Whether Economy properly filed a motion to dismiss or a counterclaim, Economy was entitled to the earnest money because it was able and willing to perform the contract while Julvanna breached the contract.
 
 See Gunn v. Heggins,
 
 964 So.2d 586, 594(¶ 18) (Miss.Ct.App.2007). This argument is without merit.
 

 ¶ 18. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.